# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Cornerstone Church of Alexandria, Pastor Darryl Knappen, Land of Promise Church, Pastor Gerald Ernst, Lifespring Church, Pastor Eric Anderson, Matthew Franzese, Jeff Backer, | Case _____ |
| Plaintiffs, | |
| vs. | **Complaint for Declaratory and Injunctive Relief** |
| Tim Walz, in his official capacity as Governor of Minnesota, or his successor, Keith Ellison, in his official capacity as Attorney General of Minnesota, or his successor, Chad Larson, in his official capacity as Douglas County Attorney, or his successor, Tom Kelly, in his official capacity as Wright County Attorney, or his successor, Donald F. Ryan, in his official capacity as Crow Wing County Attorney, or his successor, | |
| Defendants. | |

## Introduction

Minnesota has a strong tradition of protecting the "right to worship." The Minnesota Constitution admonishes the government:

> The right of every man to worship God according to the dictates of his own conscience shall never be infringed…

Minn. Const. Art. I, sec. 16. Continuing Minnesota's tradition, the plaintiffs are three congregations of Christian worshipers, their religious leaders and individual church-goers.

Their Bible requires them to worship in communion:

And let us consider how to stir up one another to love and good works, not neglecting to meet together, as is the habit of some, but encouraging one another, and all the more as you see the Day drawing near.

Hebrews 10:24-25 (ESV).[1]

The plaintiffs' religious liberties under the Free Exercise Clause of the First Amendment of the United States Constitution have been violated by Governor Walz's Executive Orders 20-74 and 20-81. Although during a pandemic, the ordinary constitutional test of strict scrutiny may not apply to the Governor's regulation of church activities (although it is still argued here in Count I), the government's regulations must still be "capable of a reasoned application" as they would be for a non-public forum. *See Minnesota Voters Alliance v. Mansky*, 138 S.Ct. 1876 (2018).

In this case, Minnesota laws regarding church leaders' and church-goers' social distancing and masking and well-attended religious gatherings are not "capable of a reasoned application." First, Executive Order 20-74 applies the following unreasonable restrictions to prevent religious ceremonies from occurring at "places of worship":  six-feet social distancing requirement, limitations on indoor gatherings to 50 percent of capacity with a maximum of 250 people, and limitations on outdoor gatherings to 250 people.  Ex. A at 5.

Second, Minnesota's combination of Executive Order 20-81 and Minnesota Statutes §609.735 apply the following unreasonable restrictions to prevent religious ceremonies from occurring at "places of worship":  criminalizing not wearing a mask in "an indoor business or public indoor space" and criminalizing wearing a mask in the same places.  Ex. B at 5, 13-

---

[1] This need for corporate worship is not restricted to Christians. For Muslims, see Book 8, Hadith 125, "The Prophet said, 'The prayer offered in congregation is twenty five times more superior (in reward) to the prayer offered alone in one's house…'"

14; Ex. C at 16.  Executive Order 20-81 does not make an exemption for a house of worship from the requirements for "an indoor business or public indoor space."  Ex. B. at 3-5.  Also, wearing a mask makes singing, verbally praying and receiving communion at church more difficult and, at times, impossible.

Third, the executive orders are "not capable of reasonable application" because Minnesota's peacetime emergency statute, section 12.31, under which the executive orders were issued, violates Minnesota Constitution, Article III's express separations-of-powers provision on two grounds:  (1) section 12.31 violates the non-delegation doctrine because it delegates legislative power to the Governor to restrict civil liberties without a "less restrictive means" limitation and (2) section 12.31 contains an unconstitutional, non-severable legislative veto on the Governor's extension of his peacetime emergency powers.  Thus, the executive orders are null and void under Article III.

In this way, the Executive Orders have strayed far from Minnesota' constitutional admonition that "the right of every man to worship God according to the dictates of his own conscience shall never be infringed."  Minn. Const. Art. I, sec. 16.

### Jurisdiction and Venue

1.      In bringing this case, the plaintiffs invoke this Court's jurisdiction under 28 U.S.C. § 1331 (federal-question jurisdiction), 28 U.S.C. § 2201 (declaratory-judgment jurisdiction), and 42 USC §§ 1983, 1988 (civil-rights statutes). The Court also has supplemental jurisdiction as to state-law based claims. 28 U.S.C. § 1367.

2.     Venue is proper in this Court under 28 U.S.C. § 1391 because the defendants are Minnesota public officials and reside within this district, and because the events or omissions giving rise to the claims presented occurred within this district.

### Parties

**A. The Plaintiffs**

3.     The Plaintiffs are Minnesota religious church congregations, religious leaders and church goers.

4.     Plaintiff Cornerstone Church of Alexandria is a Nonprofit Corporation under Minnesota Statute 317A and located at 202 7th Avenue East, Alexandria, MN 56308.

5.     Plaintiff Darryl Knappen is Pastor of Cornerstone Church of Alexandria.

6.     Plaintiff Land of Promise Church is a Nonprofit Corporation under Minnesota Statute 317A and located at 7391 20th Street NE, Buffalo, Minnesota 55313.

7.     Plaintiff Gerald Ernst is Pastor of Land of Promise Church.

8.     Plaintiff Lifespring Church is a Church located at 30 Hallett Avenue, Crosby, Minnesota 56441.

9.     Plaintiff Eric Anderson is Pastor of Lifespring Church.

10.    Plaintiff Matthew Franzese is a member of the Catholic Church and attends Mass weekly. He is also the Traverse County Attorney.

11.    Plaintiff Jeff Backer is Christian and attends religious services weekly. He is also a member of the Minnesota House of Representatives.

**B. The Defendants**

12.    The Defendants are public officials in Minnesota.

13.     Defendant Tim Walz, Minnesota's Governor, is sued in his official capacity. He issued Executive Orders 20-74 and 20-81 restricting religious liberties.

14.     Keith Ellison is sued in his official capacity as Attorney General of Minnesota. He has the authority to prosecute violations of the Governor's executive orders restricting religious liberties.

15.     Chad Larson is sued in his official capacity as Douglas County Attorney. He has the authority to prosecute violations of the Governor's executive orders restricting religious liberties.

16.     Tom Kelly is sued in his official capacity as Wright County Attorney. He has the authority to prosecute violations of the Governor's executive orders restricting religious liberties.

17.     Donald F. Ryan is sued in his official capacity as Crow Wing County Attorney. He has the authority to prosecute violations of the Governor's executive orders restricting religious liberties.

### Standing

18.     An actual controversy exists between the parties, and the plaintiffs have suffered an injury-in-fact that is directly traceable to the defendants. 28 U.S.C. § 2201. Specifically, the plaintiffs have engaged, or propose to engage, in the following exercise of their religion in a place of worship:  communal prayer, holding of hands, laying of hands, personal blessings, singing, praying, receiving communion and well-attended religious gatherings.  Under Minnesota law, these religious activities are criminal activities. The plaintiffs fear that, as a result of the plaintiffs' worship, the Governor's Executive Orders

will initiate a citation or prosecution by the Attorney General or the County Attorneys. In turn, the threat of prosecution by the Attorney General and County Attorneys has interfered with—chilled—the plaintiffs' First Amendment protected religious activities. As a result of the Governor's executive orders and the threat of prosecution by the Attorney General and County Attorneys, religious attendance and religious practices at the churches have declined.

19.     The impending threatened injury to the plaintiffs is real and concrete.

20.     This Court's favorable decision will redress the plaintiffs' injuries and allow them to exercise their First Amendment rights to worship without fear of being prosecuted or sued.

## Statement of Facts

**The Executive Orders' requirements have banned the plaintiffs' religious practices—decreasing religious participation and attendance.**

21.     The plaintiffs engage in Christian religious ceremonies.

22.     The plaintiffs at church engage in communal prayer and holding of hands

23.     The plaintiffs at church participate in ceremonies involving the laying of hands on another.

24.     The plaintiffs at church engage in personal blessings where touching occurs.

25.     The plaintiffs at church receive communion, the representation of the body and blood of Christ in the forms of bread and wine, by the pastor providing communion to each member of the congregation.

26.     The plaintiffs at church engage in singing and verbal praying.

27.     The plaintiffs host and engage in well-attended religious gatherings inside of their church and outside of their church.

28.     Executive Order 20-74's ban on houses of worship's indoor gatherings being no more than "50 percent of the normal occupant capacity as determined by the fire marshal, with a maximum of 250 people in a single self-contained space" bans well-attended indoor religious ceremonies in houses of worship.   Ex. A at 5.

29.     Executive Order 20-74's ban on houses of worship's outdoor gatherings to "not exceed 250 people" bans well-attended outdoor religious ceremonies sponsored by houses of worship.   Ex. A at 5.

30.     Executive Order 20-74's six-feet social distancing requirement bans plaintiffs' communal prayer, holding of hands, laying of hands, personal blessings and receiving communion which require getting closer than six feet to the pastor and others.

31.     The Executive Order 20-81's mask requirement has interfered with plaintiffs' singing, verbally praying and receiving communion at church.

32.     Wearing a mask makes singing, verbally praying and receiving communion at church more difficult and, at times, impossible.

33.     Plaintiffs' religious attendance has been deterred—chilled—by Minnesota's combination of Executive Order 20-81 and Minnesota Statutes §609.735 applying the following restrictions to prevent religious ceremonies from occurring at "places of worship": criminalizing not wearing a mask in "an indoor business or public indoor space" and criminalizing wearing a mask in the same places.  Ex. B at 5, 13-14; Ex. C at 16.  Executive Order 20-81 does not make an exemption for a house of worship from the requirements for "an indoor business or public indoor space." Ex. B. at 3.

34.     Minnesota's decrease in religious attendance and participation has been caused by the defendants' threats of prosecution for violating Minnesota's legal requirements as they apply to religious ceremonies and houses of worship.

35.     On May 8, 2020, Pastor Knappen on behalf of Cornerstone Church of Alexandria sent along with Representative Mary Franson and three other Minnesota pastors a letter to Governor Tim Walz asking him to end the unconstitutional restrictions on religious practices in houses of worship.  Ex. D.

36.     On or about May 22, 2020, Pastor Anderson on behalf of Lifespring Church sent along with another Minnesota pastor a letter to Governor Tim Walz asking him to end the unconstitutional restrictions on religious practices in houses of worship.  Ex. E.

37.     The plaintiffs' church attendance is threatened by prosecutions for violations of Executive Orders 20-74 and 20-81.

38.     And, as with other criminal laws, wrongful convictions are possible.

39.     Minnesota's combination of laws regulating religious activities at church creates a possibility that an innocent person will be fined and jailed, either because of an incorrect determination of the facts or an incorrect determination of Minnesota's combination of laws affecting religious practices. *See* Minn. Stat. § 609.03(3) (providing for a jail sentence or a fine as the punishment for a misdemeanor).

40.     Furthermore, a person prosecuted for violating Minnesota's combination of laws in church bears the cost of defending against the prosecution even if the criminal complaint is dismissed or the person is acquitted. The risk of the expense of defending oneself is enough to chill church attendance and religious practices.

41.     Prosecution under Minnesota's combination of laws affecting church attendance and religious practices is a realistic danger that significantly compromises the ability of Minnesotans to attend church to worship.

42.     That danger risks chilling the plaintiffs' and others' constitutionally protected church attendance and religious activities, even if nobody is ever prosecuted for violating the executive orders.

**Procedural Background**

43.     On March 13, 2020, the Governor signed "Executive Order 20-01: Declaring a Peacetime Emergency and Coordinating Minnesota's Strategy to Protect Minnesotans from COVID-19."

44.     Since then, the Governor has issued eighty-three executive orders,  20-01 through 20-84.

45.     The Governor has claimed legal authority to issue these executive orders pursuant to Minn. Stat. § 12.31, Subd. 2.

46.     The Governor has issued subsequent executive orders extending the peacetime emergency for additional thirty day periods with Executive Order 20-35 on April 13, 2020, Executive Order 20-53 on May 13, 2020, Executive Order 20-75 on June 12, 2020, Executive Order 20-78 on July 13, 2020, and Executive Order 20-83 on August 12, 2020.

47.     The executive orders extending the Governor's peacetime emergency powers have generally noted that the governor's asserted authority could only be rescinded by "a majority vote of each house of the legislature pursuant to Minnesota Statute 2019, section 12.31, subdivision 2(b)."

9

**Executive Order 20-74 makes it a crime in a church to not maintain six-feet social distancing and to have well-attended religious gatherings indoors and outdoors.**

48.     On June 5, 2020, Defendant Walz signed "Executive Order 20-74: Continuing to Safely Reopen Minnesota's Economy and Ensure Safe Non-Work Activities during the COVID-19 Peacetime Emergency." Ex. A.

49.     Executive Order 20-74 makes it a crime in a church not to maintain six-feet social distancing between households.

50.     Executive Order 20-74 bans houses of worship having indoor gatherings of more than "50 percent of the normal occupant capacity as determined by the fire marshal, with a maximum of 250 people in a single self-contained space."   Ex. A at 5.

51.     Executive Order 20-74 bans houses of worship having outdoor gatherings exceeding "250 people."   Ex. A at 5.

52.     Paragraph 6 of Executive Order 20-74 makes all these requirements apply to "places of worship…weddings, funeral or planned services such as worship, rituals, prayer meetings or scripture studies":

> Weddings, funerals, and services. Places of worship, funeral homes, and other venues that offer gathering space for weddings, funerals, or planned services such as worship, rituals, prayer meetings, or scripture studies, may host such weddings, funerals, or services exceeding the limits set forth above, provided that they adhere to the following requirements:
>
> A. In all settings, ensure a minimum of 6 feet of physical distancing between households.
> B. In indoor settings, occupancy must not exceed 50 percent of the normal occupant capacity as determined by the fire marshal, with a maximum of 250 people in a self-contained space.
> C. In outdoor settings, gatherings must not exceed 250 individuals.

Ex. A at 5.

10

53.     Paragraph 11 of Executive Order 20-74 provides the Attorney General and County Attorneys with authority to criminally or civilly prosecute plaintiffs for violations by houses of worship, religious leaders and church-goers:

> Pursuant to Minnesota Statutes 2019, section 12.45, an individual who willfully violates this Executive Order is guilty of a misdemeanor and upon conviction must be punished by a fine not to exceed $1,000 or by imprisonment for not more than 90 days. Any business owner, manager, or supervisor who requires or encourages any of their employees, contractors, vendors, volunteers, or interns to violate this Executive Order is guilty of a gross misdemeanor and upon conviction must be punished by a fine not to exceed $3,000 or by imprisonment for not more than a year. In addition to those criminal penalties, the Attorney General, as well as city and county attorneys, may seek any civil relief available pursuant to Minnesota Statutes 2019, section 8.31, for violations of this Executive Order, including civil penalties up to $25,000 per occurrence from businesses and injunctive relief.

Ex. A at 17.

54.     Executive Order 20-74 does not make any accommodations for religious practices by houses of worship, religious leaders or church-goers such as communal prayer, holding of hands, laying of hands, personal blessings, receiving communion and well-attended religious gatherings.

**Executive Order 20-81 makes it a crime in a church not to wear a mask.**

55.     On July 22, 2020, Defendant Walz signed "Executive Order 20-81: Requiring Minnesotans to Wear a Face Covering in Certain Settings to Prevent the Spread of COVID-19." Ex. B.

56.     Executive Order 20-81 generally asserts: "Minnesotans must wear a face covering in indoor businesses and indoor public settings." Ex. B at 3.

57.     Executive Order  20-81 establishes criminal enforcement provisions for not wearing a mask, to-wit:

11

1.   For an individual, it is criminal petty misdemeanor not to be wearing a mask: "Any individual [adult, non-student] who willfully violates this Executive Order is guilty of a petty misdemeanor and upon conviction must be punished by a fine not to exceed $100."

2.   For a business, it is a criminal misdemeanor not to be wearing a mask and requiring compliance: "Any business owner, manager, or supervisor who fails to comply with this Executive Order is guilty of a misdemeanor and upon conviction must be punished by a fine not to exceed $1,000, or by imprisonment for not more than 90 days."

Ex. B at 13-14.

58.   Executive Order 20-81 does not make any religious accommodation to the mask requirement for singing, verbal prayer or receiving communion in church.

**Minnesota Statutes § 609.735 makes it a crime in a church to wear a mask.**

59.   To the contrary, Minnesota Statutes § 609.735 (Ex. C) makes wearing a mask in a public place a criminal act, punishable by up to 90 days imprisonment and/or a $1000 fine.

60.   The only exceptions to this prohibition is if wearing a mask is "based on religious beliefs, or incidental to amusement, entertainment, protection from weather, or medical treatment." Ex. C.

61.   There is no exception in Minnesota Statutes § 609.735 for persons complying with the Executive Order 20-81 requirement to wear a mask.

**Under the Minnesota Statute § 609.735 and under Executive Order 20-74 and 20-81, the Attorney General and the defendant county attorneys can prosecute churches and church-goers for violations.**

62.     Under Executive Orders 20-74 and 20-81 and Minnesota Statute § 609.735, the Attorney General and the County Attorneys criminally prosecute or civilly sue based on violations in and by houses of worship, by religious leaders and by church-goers.

63.     So, when plaintiffs are engaged in religious activities in churches violating Minnesota Statutes § 609.735 or Executive Orders 20-74 and 20-81, Attorney General Ellison and the defendant County Attorneys can prosecute or sue plaintiffs for violations which occur during religious ceremonies in houses of worship.

**Plaintiffs claim that Executive Orders 20-74 and 20-81 are legally null and void under the Minnesota Constitution because they violate Article III's non-delegation doctrine and ban on legislative vetoes.**

64.     The plaintiffs also claim that Executive Orders 20-74 and 20-81 are legally null and void under the Minnesota Constitution as violative of the non-delegation doctrine, which prohibits delegation of pure legislative power to the Governor to restrict civil liberties without "least restrictive means" language, and as violative of the constitutional ban on legislative vetoes, which prohibits the legislature from interfering with the exercise of executive powers.

## Claims

**Count 1: Executive Orders 20-74 and 20-81 imposing legal requirements in houses of worship violate the plaintiffs' First Amendment rights by restricting free exercise of religion.**

65.     The Plaintiffs incorporate this complaint's previous paragraphs.

66.     Plaintiffs' religious beliefs emphasize the need to be in community in order to be a part of the religion.

67.     Groups of Christian believers meet in places of worship purchased and built for the purpose of housing a community of believers.

68.     The free exercise of religion in churches is conduct constitutionally protected under the First Amendment's Free Exercise Clause, which applies to the states through the Fourteenth Amendment.

69.     Under the Governor's Executive Order 20-74, legal requirements are imposed upon plaintiffs interfering with their religious practices.

70.     The requirements of Executive Order 20-74 interferes with, chills or bans communal prayer, holding of hands, laying of hands, personal blessings, receiving communion, and well-attended religious gatherings.

71.     The Governor's Executive Order 20-81 requires mask wearing which interferes with, chills or bans church singing, verbal prayer and receiving communion.

72.     The Governor, through Executive Orders 20-74 and 20-81, took steps towards criminalizing or prosecuting plaintiffs for such conduct in church.

73.     The defendant prosecutors have the authority to prosecute or sue plaintiffs based on violations of Executive Orders 20-74 and 20-81 in church.

74.     Minnesota criminalizing conduct of church attendees suppresses plaintiffs' ability to worship and practice their religion in houses of worship and restricts the ability of the plaintiffs to associate with other members of the faith.

75.   Plaintiffs are not able to engage in worship in church because of the Governor's executive order threatening prosecution by defendant prosecutors if they do so.

76.   Many other states and municipalities have responded to the pandemic without burdening religious activity in churches.[2] In Texas, Governor Greg Abbott exempted anyone "actively providing or obtaining access to religious worship…"[3] In Ohio, the state Department of Health exempted "an officiant of a religious services…"[4] In Nashville, Tennessee, the Metro Public Health Department exempted people from wearing face coverings, "While in a place of worship…"[5] In Phoenix, Arizona, the City Council exempted, "people whose religious beliefs prevent them from wearing a face covering…"[6] In all of these cases governments strongly encouraged the faithful to utilize masks or practice social distance in churches but did not mandate compliance nor threaten criminal prosecution.

77.   Additionally, Executive Order 20-74 and 20-81 are legally null and void as they violate Minnesota's separation-of-powers, as required by Minnesota Constitution Article

---

[2] Dallas, Kelsey. "Should Churches be excluded from mask mandates?" Deseret News. https://www.deseret.com/indepth/2020/7/16/21316033/coronavirus-texas-mask-mandates-religious-exemptions-church-outbreaks-religious-freedom. Accessed 8/10/2020.
[3] Governor Greg Abbott Executive Order  GA-29. https://gov.texas.gov/uploads/files/press/EO-GA-29-use-of-face-coverings-during-COVID-19-IMAGE-07-02-2020.pdf. Accessed 8/10/2020.
[4] Ohio Department of Health. Addendum to Director's Order for Facial Coverings in Counties in Level 3 Public Health Advisory. https://coronavirus.ohio.gov/static/publicorders/Addendum-Facial-Coverings-07-17-20.pdf. Accessed 8/10/2020
[5] Nashville Metro Public Health Department. Order 8. https://www.nashville.gov/Metro-Clerk/Legal-Resources/Emergency-Health-Orders/Order-8.aspx. Accessed 8/10/2020.
[6] City of Phoenix. Declaration of Phoenix City Council Requiring Face Coverings. https://www.phoenix.gov/newsite/Documents/Mayor%27s%20Declaration_06-19-20.pdf. Accessed 8/20/20.

III's express separation-of-powers provisions, the non-delegation doctrine against delegations of pure legislative power to the Governor, and ban on legislative vetoes as further explained below in Counts 3 and 4.

78.     Counts 3 and 4 are incorporated in their entirety herein by reference.

79.     Executive Orders 20-74 and 20-81, as applied to houses of worship, religious leaders and church-goers, are not narrowly tailored to meet a compelling state interest.

80.     There are less restrictive means for the government to accomplish its goals.

81.     For example, instead of social distancing banning communal prayer holding of hands, laying of hands, personal blessings and receiving communion, the government could require wearing protective gloves.

82.     For example, instead of criminalizing wearing a mask and not wearing a mask, which is unmoored from science, logic and reason, the government could choose just one, non-conflicting mask policy in response to the pandemic.

83.     Minnesota's combination of laws has unconstitutionally restricted, chilled, and banned the Plaintiffs' First Amendment protected church attendance and religious activities.

84.     Under 28 U.S.C. § 2201(a), this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

85.     The plaintiffs are entitled to a declaration under 28 U.S.C. § 2201(a) that Minnesota's combination of laws violate the First Amendment rights of the plaintiffs.

86. A declaratory judgment will serve a useful purpose in settling this complaint's constitutional challenges to Minnesota's combination of laws affecting churches and worship activities.

87. A declaratory judgment will terminate, and afford relief from, the threat, uncertainty, and insecurity of Minnesota's combination of laws affecting churches and worship activities.

88. The plaintiffs are further entitled to a permanent injunction against all the defendants to prevent the civil and criminal enforcement of Minnesota's combination of laws affecting churches and worship activities.

**Count 2: Executive Orders 20-74 and 20-81, as applied to churches, are "not capable of reasoned application."**

89. The Plaintiffs incorporate this complaint's previous paragraphs.

90. Religious activity at a place of worship is typically considered a private place.

91. However, during a pandemic, a church could be judicially treated like a non-public forum. If so, in *Minnesota Voters Alliance v. Mansky*, 138 S.Ct. 1876 (2018), the U.S. Supreme Court, with respect to the non-public forum of the polling place, held that Minnesota's political apparel ban in the polling place violated the Free Speech Clause because it was "not capable of reasoned application." *Id.* If *Mansky* applies to a church in a pandemic, then government regulations of religious ceremonies are unconstitutional if they are "not capable of reasoned application."

92.     Under the Governor's Executive Order 20-74, Minnesota expressly imposed limits of six-feet social distancing requirement on religious ceremonies in churches and limits on well-attended religious gatherings.

93.     The combination of Executive Order 20-74 and 20-81 have deterred or chilled religious practices in or by plaintiffs: well-attended religious gatherings, communal prayer, holding of hands, laying of hands, personal blessings and receiving communion in church and church attendance generally.

94.     Additionally, Executive Order 20-74 and 20-81 are legally null and void as they violate Minnesota's separation-of-powers, as required by Minnesota's Constitution Article III's express separation-of-powers provisions, the non-delegation doctrine against delegations of pure legislative power to the Governor, and ban on legislative vetoes as further explained below in Counts 3 and 4

95.     Counts 3 and 4 are incorporated in their entirety herein by reference.

96.     Executive Order 20-74 is not capable of reasoned application because the six-feet social distancing requirement and limits on well-attended indoor and outdoor religious gatherings interferes with, chills or bans communal prayer, holding of hands, laying of hands, personal blessings, receiving communion and well-attended religious gatherings,

97.     Executive Order 20-81 is not capable of reasoned application because its mask wearing requirement, in combination with Minnesota Statutes § 609.735 criminalizing wearing a mask, interferes with, chills or bans singing, verbal prayer and receiving communion.

18

98.     As to masks, Minnesota has less restrictive means of addressing the pandemic. Minnesota, in order to fight the pandemic, it can choose to criminalize not wearing a mask or criminalize wearing a mask at church. But, it can't do both without violating the First Amendment.

99.     Minnesota's combination of laws has unconstitutionally restricted, chilled, and banned the Plaintiffs' First Amendment protected church attendance and religious activities.

100.     Under 28 U.S.C. § 2201(a), this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

101.     The plaintiffs are entitled to a declaration under 28 U.S.C. § 2201(a) that Minnesota's combination of laws violate the First Amendment rights of the plaintiffs.

102.     A declaratory judgment will serve a useful purpose in settling this complaint's constitutional challenges to Minnesota's combination of laws affecting churches and worship activities.

103.     A declaratory judgment will terminate, and afford relief from, the threat, uncertainty, and insecurity of Minnesota's combination of laws affecting churches and worship activities.

104.     The plaintiffs are further entitled to a permanent injunction against all the defendants to prevent the civil and criminal enforcement of Minnesota's combination of laws affecting churches and worship activities.

**Count 3: The Governor's Executive Orders 20-74 and 20-81 violate the Minnesota Constitution's Article III non-delegation doctrine because Minnesota Statutes § 12.31 authorizing restriction of civil liberties does not include "least restrictive means" language and Executive Order 20-81's mask mandate conflicts with Minnesota Statutes § 609.735.**

105.    The Plaintiffs incorporate this complaint's previous paragraphs.

106.    The Governor's Executive Orders 20-74 and 20-81 violate Minnesota's non-delegation doctrine because the Governor's executive orders based on Minnesota Statutes § 12.31 are an exercise of pure legislative power.

107.    Minnesota Statutes § 12.31 authorizes the Governor's peacetime powers to restrict civil liberties but without the constitutionally-necessary "least restrictive means" language.

108.    The Minnesota Supreme Court has also held that agency rules can not conflict with statutes:

> While "administrative agencies may adopt regulations to implement or make specific the language of a statute, they cannot adopt a conflicting rule."

*Hirsch v. Bartley-Lindsay Co.*, 537 NW 2d 480 (Minn: 1995)(citation omitted).

109.    A Governor's executive orders cannot conflict with statutes without violating Minnesota Constitution's express separation-of-powers provisions.

110.    Executive Order 20-81's mask mandate conflicts with Minnesota Statutes § 609.735 because the former criminalizes not wearing a mask and the latter criminalizes wearing a mask.

**Minnesota's non-delegation doctrine prohibits delegations of pure legislative power to the Governor.**

111. Throughout its history, the Minnesota Supreme Court has jealously guarded the constitutional division of powers. Justice Elliott, in *State v. Brill,* described at length the history of the doctrine of separation of powers with its limits on the executive and judiciary branches as well as the legislative branch:

> The tendency to sacrifice established principles of constitutional government in order to secure centralized control and high efficiency in administration may easily be carried so far as to endanger the very foundations upon which our system of government rests.
>
> * * *
>
> In speaking of the old Constitution of Virginia, Jefferson said: 'All the powers of government, legislative, executive, and judicial, result to the legislative body. The concentrating these in the same hands is the precise definition of a despotic government. It will be no alleviation that these powers will be exercised by a plurality of hands and not a single one.' Jefferson, Notes on Virginia, p. 195; Story, Const. Law, vol. 1, § 525.[7]

112. The separation of powers doctrine is familiar to this Court, but bears repeating because of the significance of the doctrine's role in this controversy: "Under the Separation of Powers Clause, no branch can usurp or diminish the role of another branch."[8]

113. The three departments of state government, the legislative, executive, and judicial, are independent of each other. Neither department can control, coerce, or restrain the action or non-action of either of the others in the exercise of any official power or duty conferred by the Constitution, or by valid law, involving the exercise of discretion.

---

[7] *State v. Brill,* 111 N.W. 639, 640-41 (1907).
[8] *See* Minn. Const. art. III, § 1; *Brayton v. Pawlenty,* 768 N.W.2d 357, 365 (Minn. 2010).

114.    The Minnesota Constitution has an express separation-of-powers provision. Article III states that "[t]he powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise *any* of the powers properly belonging to either of the others except in the instances *expressly* provided in this constitution."[9]

115.    This is an express separation-of-powers article not found in the U.S. Constitution. Article III expressly bars any department from assuming or asserting any "inherent powers"— powers not "expressly" given—that properly belong to either of the others.

116.    In short, no "department can control, coerce, or restrain the action or inaction of either of the others in the exercise of any official power or duty conferred by the Constitution."[10]

117.    Minnesota Supreme Court precedent has "recognized that where the constitution commits a matter to one branch of government, the constitution prohibits the other branches from ... interfering with the coordinate branch's exercise of its authority."[11]

118.    Arising from Article III is Minnesota's non-delegation doctrine. The state legislature cannot delegate pure legislative power to any government official—including the Governor.

---

[9] *Id.* (emphasis added).

[10] *Id.*

[11] *Limmer*, 819 N.W.2d at 627-28 (Minn. 2012) *citing In re Civil Commitment of Giem,* 742 N.W.2d 422, 429 (Minn. 2007); *see also State ex rel. Birkeland v. Christianson,* 179 Minn. 337, 340, 229 N.W. 313, 314 (1930) (explaining that no branch of government "can control, coerce or restrain the action or non-action of either of the others in the exercise of any official power or duty conferred by the constitution").

119.    The Minnesota Supreme Court stated in *City of Richfield v. Local 1215, International Association of Fire Fighters*, a case where a party challenged the validity of a delegation of legislative authority:

> The non-delegation doctrine teaches that purely legislative power cannot be delegated. *Lee v. Delmont*, 228 Minn. 101, 112, 36 N.W.2d 530, 538 (1949). However, where a law embodies a reasonably clear policy or standard to guide and control administrative officers, so that the law takes effect by its own terms when the facts are ascertained by the officers and not according to their whim, then the delegation of power will be constitutional. 228 Minn. at 113, 36 N.W.2d at 538.

276 N.W.2d 42, 45 (1979). *See also State v. King*, 257 N.W.2d 693 (Minn. 1977); *City of Minneapolis v. Krebes*, 303 Minn. 219, 226 N.W.2d 617 (1975); *Thomas v. Housing and Redevelopment Authority*, 234 Minn. 221, 48 N.W.2d 175 (1951).

120.    More recently, the Minnesota Court of Appeals, has confirmed the continued vitality of the non-delegation doctrine:

> The legislature "cannot delegate purely legislative power to any other body, person, board, or commission."

*Coalition of Greater Minnesota Cities v. Minnesota Pollution Control Agency*, 765 N.W.2d 159, 165 (Minn. App. 2009), *quoting Lee v. Delmont*, 228 Minn. 101, 112, 36 N.W.2d 530, 538 (1949) (citations omitted).

121.    In addition, in cases involving civil liberties, delegations of legislative power are particularly apt to be closely scrutinized and narrowly construed. *See, e.g., I.N.S. v. Chadha*, 462 U.S. 919 (U.S. 1983) (a deportable alien had standing to challenge validity of law due to legislative veto).

**The Governor's Executive Order 20-74 and 20-81 are unconstitutional as an exercise of pure legislative power because there is no "least restrictive means' language in Minnesota Statutes § 12.31 limiting the authority of the Governor to restrict civil liberties in a pandemic.**

122.     The Governor issued Executive Order 20-74 and 20-81, in response to the pandemic under Minnesota Statutes § 12.31 which authorize the Governor to restrict civil liberties in peacetime emergencies.

123.     The Governor's Executive Order  20-74 is unconstitutional as an exercise of pure legislative power because there is no "least restrictive means" or similar language in Minnesota Statutes § 12.31—as there is in Minnesota's guardianship statutes[12]—to limit the Governor's authority to restrict civil liberties in a pandemic.

124.     Because Minnesota Statutes § 12.31 does not contain the "least restrictive means" text to limit the Governor's authority to restrict civil rights in a pandemic, Minnesota Statutes § 12.31 is a violation of Minnesota's Article III non-delegation doctrine.

**The Governor's Executive Order 20-81 is unconstitutional as an exercise of pure legislative power conflicting with legislatively-enacted law.**

125.     The Governor's Executive Order 20-81, requiring mask wearing, issued under Minnesota Statutes § 12.31, subdivision 2, is unconstitutional because it is an exercise of pure legislative power conflicting with legislatively-enacted law.

126.     The Governor's executive orders exercise legislative power. Section 12.32 describes that the executive orders and rules promulgated by the Governor have the "full

---

[12]Minn. Stat.  § 524.5-310 (the proposed ward's "identified needs cannot be met by less restrictive means…").

force and effect of law":

> 12.32 GOVERNOR'S ORDERS AND RULES, EFFECT. Orders and rules promulgated by the governor under authority of section 12.21, subdivision 3, clause (1), when approved by the Executive Council and filed in the Office of the Secretary of State, have, during a national security emergency, peacetime emergency, or energy supply emergency, the full force and effect of law. Rules and ordinances of any agency or political subdivision of the state inconsistent with the provisions of this chapter or with any order or rule having the force and effect of law issued under the authority of this chapter, is suspended during the period of time and to the extent that the emergency exists.

127.    But, section 12.32 limits the Governor's legal authority to suspending "rules and ordinances of any agency or political subdivision of the state" (county and local governments)—not legislatively-enacted laws.

128.    The Governor is not given the legal authority to suspend state laws or to conflict with state laws. In order to amend or repeal a state law, the Governor has to work through the legislative law-making process, not issue executive orders conflicting with state law.

129.    Legislative power is exercised by the Governor when he issues executive orders restricting civil liberties.

130.    On July 22, 2020, Minnesota's Governor signed "Executive Order 20-81: Requiring Minnesotans to Wear a Face Covering in Certain Settings to Prevent the Spread of COVID-19."

131.    Executive Order  20-81 generally asserts: "Minnesotans must wear a face covering in indoor businesses and indoor public settings." Ex. B at 3.

132.    Executive Order 20-81 establishes enforcement provisions for violations of

the Executive Order for not wearing a mask. For an individual, it is petty misdemeanor not

to be wearing a mask:

> Any individual [adult, non-student] who willfully violates this Executive Order
> is guilty of a petty misdemeanor and upon conviction must be punished by a
> fine not to exceed $100.

Ex. B at 13-14.

133.    For a church, which is included in the definition of "business," it is a criminal

misdemeanor not to be wearing a mask and requiring compliance:

> Any business owner, manager, or supervisor who fails to comply with this
> Executive Order is guilty of a misdemeanor and upon conviction must be
> punished by a fine not to exceed $1,000, or by imprisonment for not more than
> 90 days.

Ex. B at 13-14.

134.    Executive Order  20-81 conflicts with Minnesota Statutes § 609.735 which

makes mask wearing a criminal act:

> "A person whose identity is concealed by the person in a public place by means
> of a … *mask*, or other disguise, unless based on religious beliefs, or incidental
> to amusement, entertainment, protection from weather, or medical treatment,
> is guilty of a *misdemeanor*."

Ex. C.

135.    In Minnesota, wearing a mask is a crime.

136.    To the contrary, Executive Order 20-81 makes it a crime in Minnesota not to

wear a mask.

**Executive Orders 20-74 and 20-81 violate the legislative prerogatives to make law under the Minnesota Constitution.**

137.     The Governor's Executive Orders 20-74 and 20-81 violate the legislative

prerogative of making laws under the Minnesota Constitution, Article IV, section 22:

> Sec. 22. Majority vote of all members to pass a law. The style of all laws of this state shall be: "Be it enacted by the legislature of the state of Minnesota." No law shall be passed unless voted for by a majority of all the members elected to each house of the legislature, and the vote entered in the journal of each house.

138.     A majority of the respective state legislative bodies never voted to pass the

Governor's Executive Orders 20-74 and 20-81 and repeal Minnesota Statutes §609.735.

139.     The Governor's Executive Orders 20-74 and 20-81 also violate the

Presentment Clause of Minnesota Constitution, Article IV, section 23:

> Sec. 23. Approval of bills by governor; action on veto. Every bill passed in conformity to the rules of each house and the joint rules of the two houses shall be presented to the governor

The Governor's Executive Orders 20-74 and 20-81 were not passed in conformity to the

rules of each house and the joint rules of the two houses and subsequently presented to the

Governor for his signature or veto.

140.     Importantly, the state legislature did not provide for judicial review of the

Governor's executive orders under Minn. Stat. § 14.44 which provides judicial review of

state agency rules. As the Minnesota Court of Appeals ruled on May 26, 2020, in a case

brought by small businesses closed by the Governor's executive orders:

> The [Emergency Executive Orders] were issued pursuant to the Governor's authority under the Minnesota Emergency Management Act of 1995, Minn. Stat. §§ 12.01-.61(2018). Petitioners assert that the EEOs are statements of general applicability and future effect and are therefore subject to review under Minn. Stat. § 14.44. However, [Minnesota Administrative Procedures Act] expressly excepts from its application "emergency powers in

27

sections 12.31 to 12.37." Minn. Stat. § 14.03, subd. 1. And, consistent with the exception in MAPA, Minn. Stat. § 12.21, subd. 3(a) authorizes the governor to "make, amend, and rescind the necessary orders and rules to carry out the provisions of this chapter…without complying with sections 14.001 to 14.69." Thus, the EEOs were neither required to be formally promulgated under MAPA nor were they so promulgated. Accordingly, the EEOs are not subject to review by this court under Minn. Stat. § 14.44.

*Free Minnesota Small Business Coalition, et al. v. Tim Walz, Governor of Minnesota,* Case  A20-0641, at 2-3 (May 26, 2020).

141.    So, the Governor's Executive Orders  20-74 and 20-81 which have the "full force and effect of law" are not subject to statutorily-provided review by the judicial department. The state legislature's failure to provide judicial oversight of the Governor's executive orders is another aspect of the Governor exercising pure legislative power.

142.    Further, the Governor's executive orders are exempted from the administrative procedural safeguards of Minnesota's administrative procedures act, Minnesota Statutes chapter 14, for state agency rulemaking which provides for notice, agency statement of reasonableness and need, a hearing and an administrative law judge's report.  Minn. Stat. § 14.03, subd. 1.

143.    Minnesota Administrative Procedures Act expressly exempts from its application "emergency powers in sections 12.31 to 12.37." Minn. Stat. § 14.03, subd. 1. For example, the following procedural safeguards which apply to state agency rulemaking do not apply to the Governor's executive orders:

- Agency statement of need and reasonableness under Minn. Stat. § 14.131;
- Public notice under Minn. Stat. § 14.14, subd. 1a;
- Public hearing before administrative law judge under Minn. Stat. § 14.14, subd. 2a; and,

28

- Administrative Law Judge reports under Minn. Stat. § 14.15.

Importantly, the administrative law judge's report requires "stating findings of fact and conclusions and recommendations, taking notice of the degree to which the agency has (i) documented its statutory authority to take the proposed action, (ii) fulfilled all relevant procedural requirements of law or rule, and (iii) in rulemaking proceedings, demonstrated the need for and reasonableness of its proposed action with an affirmative presentation of facts." All of these procedural safeguards are missing from the Governor's executive orders because Minnesota Statutes § 14.03, subd. 1 exempts "emergency powers in sections 12.31 to 12.37" from these procedural safeguards.

144.   The Governor's executive orders promulgated under section 12.31 do not comply with the Minnesota Constitution, Article III, which states "No person…constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution."

145.   The Governor's executive orders exceed his legal authority by exercising pure legislative power.

146.   The Court should declare the Governor's Executive Order 20-74 and 20-81 as unconstitutional under the Minnesota Constitution and issue an injunction enjoining their enforcement.

**Count 4: Minnesota Statutes § 12.31, subdivision 2, is unconstitutional because of Minnesota Constitution's Article III bans such legislative veto provisions and because the unconstitutional provision cannot be severed.**

147.   Minnesota Statutes § 12.31 is unconstitutional because it contains a legislative veto and the unconstitutional provision cannot be severed.

**The Minnesota Constitution does not authorize the legislative veto in Minnesota Statutes § 12.31, subdivision 2.**

148.    The Minnesota Statutes § 12.31, applying to peacetime emergencies, is unconstitutional because it has a provision unconstitutionally authorizing a legislative veto on extension of peacetime emergencies beyond thirty days. Minnesota Statutes § 12.31, subdivision 2, provides that:

> (a)…A peacetime emergency must not be continued for more than five days unless extended by resolution of the Executive Council up to 30 days… (b) By majority vote of each house of the legislature, the legislature may terminate a peacetime emergency extending beyond 30 days. If the governor determines a need to extend the peacetime emergency declaration beyond 30 days and the legislature is not sitting in session, the governor must issue a call immediately convening both houses of the legislature.

And, Article III of the Minnesota Constitution bans legislative vetoes.

149.    The legislative veto is a feature of statutes enacted by a legislative body.

150.    A legislative veto is a statutory provision whereby the state legislature passes a statute granting authority to the Governor to make or implement law and reserves for itself the ability to override, through simple majority vote, individual actions taken by the Governor pursuant to that authority.

151.    Although there is not a Minnesota appellate case on point regarding the Minnesota Constitution and legislative vetoes, the U.S. Supreme Court has ruled under similar provisions in the U.S. Constitution that such a legislative veto is unconstitutional. The U.S. Supreme Court in *I.N.S. v. Chadha*, 462 U.S. 919 (U.S. 1983) held that a section of the Immigration and Nationality Act authorizing a legislative veto to invalidate decisions of the executive branch to allow a particular deportable alien to remain in the United States is unconstitutional, because action by a legislative body pursuant to that section is essentially

legislative and thus subject to the constitutional requirements of passage by a majority of both Houses and presentation to the President.

152.    The facts surrounding the Governor's executive orders even make a stronger case than *Chadha* for a constitutional violation under the analogous[13] separation-of-powers articles in the Minnesota Constitution. In *Chadha,* the statute provided the legislative veto under a duly-enacted law. Congress could veto executive action under that duly-enacted law. Whereas, with the Governor's executive orders, the Governor is making the so-called "duly-enacted" law, leaving the legislature with a legislative veto. Both are unconstitutional because the legislative veto violates the separation-of-powers articles in the respective constitutions.

153.    Specifically, the legislative veto of the Governor's executive orders provided in section 12.31, subdivision 2, violates the legislative prerogative of making laws under the Minnesota Constitution, Article IV, section 22:

> Sec. 22. Majority vote of all members to pass a law. The style of all laws of this state shall be: "Be it enacted by the legislature of the state of Minnesota." No law shall be passed unless voted for by a majority of all the members elected to each house of the legislature, and the vote entered in the journal of each house.

Instead of a majority of the legislature enacting the laws, the Governor is making the "duly-enacted" laws by his executive orders.

154.    The Governor's executive orders also violate the Presentment Clause of Minnesota Constitution, Article IV, section 23:

> Sec. 23. Approval of bills by governor; action on veto. Every bill passed in conformity to the rules of each house and the joint rules of the two houses shall be presented to the governor.

---

[13] Notably, the Minnesota Constitution has an express separation-of-powers article in Article III that the U.S. Constitution does not have.

Instead of the legislature presenting the passed bills to the Governor for signature, the Governor makes the so-called "duly-enacted" laws in the executive orders and presents them to the state legislature for a possible legislative veto.

155.    Constitutionally, the Governor has put the cart before the horse. Under the Minnesota Constitution, the state legislature is to enact the bills and present them to the Governor to make law. Instead, in violation of the Minnesota Constitution, the Governor is making the laws by executive order and presenting them to the legislature for legislative veto.

**The unconstitutional legislative veto provision cannot be severed from the statute because of legislative intent.**

156.    Importantly, since the unconstitutional legislative veto provision of Minnesota Statutes § 12.31, subdivision 2, cannot be severed, all of the Governor's emergency peacetime powers are unconstitutional.

157.    Minnesota Statutes § 645.20 on construction of severable provisions provides in relevant part:

> If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

The Minnesota Supreme Court has held that if the legislature would not have enacted the remaining provisions without those that are to be severed, the court may not sever the unconstitutional provision from the statute and leave the remaining language intact. *See*

*Deegan v. State*, 711 N.W.2d 89, 98 (Minn. 2006) *State v. Shattuck,* 704 N.W.2d 131, 143 (Minn.

2005); *Chapman v. Comm'r of Revenue,* 651 N.W.2d 825, 836 (Minn.2002).

158.    In this case, the legislative veto provision cannot be severed because of

legislative intent.

159.    First, Minnesota Statutes, chapter 12 does not have a provision requiring

severability.

160.    Second, the state legislature did not have the intent to give the Governor

exclusive authority to make law through executive orders forever without legislative

approval—as evidenced by the statutory provision for legislative veto to end the Governor's

peacetime emergency powers.

161.    The legislature enacted the legislative veto to have a way to check the

Governor's executive powers.

162.    The legislature would never have given the Governor these broad emergency

powers without some legislative check.

163.    So, the legislative intent precludes severing the unconstitutional legislative veto

provision from the rest of the statute.

164.    Accordingly, the Court cannot sever the unconstitutional legislative veto; it

must hold that the entirety of section 12.31, subdivision 2 is unconstitutional.

165.    The Court should declare the Governor's Executive Orders 20-74 and  20-81

as unconstitutional and issue an injunction enjoining their enforcement.

**Count V:  Executive Orders 20-74 and 20-81 violate the plaintiffs' religious liberty rights under the Minnesota Constitution.**

166.    The plaintiffs incorporate this complaint's previous paragraphs.

167.    The plaintiffs have religious liberty rights under the Minnesota Constitution.

168.    The Minnesota Constitution, Article I, protects religious liberty rights:

Sec. 16. Freedom of conscience; no preference to be given to any religious establishment or mode of worship.  The enumeration of rights in this constitution shall not deny or impair others retained by and inherent in the people. The right of every man to worship God according to the dictates of his own conscience shall never be infringed; nor shall any man be compelled to attend, erect or support any place of worship, or to maintain any religious or ecclesiastical ministry, against his consent; nor shall any control of or interference with the rights of conscience be permitted, or any preference given by law to any religious establishment or mode of worship; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the state, nor shall any money be drawn from the treasury for the benefit of any religious societies or religious or theological seminaries.

Minn. Const., Art. I, sec. 16.

169.    Executive Order 20-74's restrictions on religious liberties and practices, detailed above, violate the plaintiffs' religious liberty rights under the Minnesota Constitution, Article I, section 16.

170.    The combination of Executive Order 20-81's and Minnesota Statutes § 609.735 restrictions on religious liberties and practices, detailed above, violate the plaintiffs' religious liberty rights under the Minnesota Constitution, Article I, section 16.

171.    Minnesota's combination of laws, and defendants' threat of criminal prosecution or civil litigation,  have interfered with plaintiffs' church attendance and religious practice as detailed above.

172.    Minnesota's combination of laws are not narrowly tailored to meet a compelling state interest as detailed above.

173.    Minnesota's combination of laws are not capable of a reasoned application as detailed above.

174.    Minnesota's combination of law unconstitutionally restrict, chill, and ban plaintiffs' church attendance and religious activities.

175.    For these reasons, the Court should declare Minnesota's combination of laws unconstitutional and issue an injunction enjoining their enforcement.

**Plaintiffs are entitled to injunctive relief due to the irreparable harm regarding the violation of constitutional protections.**

176.    The plaintiffs incorporate this complaint's previous paragraphs.

177.    The plaintiffs are entitled to preliminary and permanent injunctive relief prohibiting the Defendants from enforcing the Governor's executive orders.

178.    An injunction will terminate, and afford relief from the threat, uncertainty, and insecurity, of the Governor's executive orders.

179.    Minnesota's executive orders create a chilling effect on the plaintiffs' First Amendment protected church attendance and religious activities.

180.    The plaintiffs are likely to prevail on this action's merits.

181.    The plaintiffs will suffer irreparable harm if the defendants are not enjoined from enforcing the executive orders.

182.    The defendants will not suffer any harm if they are prevented from enforcing the executive orders.

183.     Granting injunctive relief is in the public interest because doing so protects everybody's religious liberties.

**Constitutional claims under 42 U.S.C. § 1983 entitle the Plaintiffs to attorneys' fees and costs.**

184.     The plaintiffs incorporate this complaint's previous paragraphs.

185.     The defendants are responsible for enforcing the executive orders.

186.     Because enforcement or threatened enforcement of the executive orders violate, under color of state law, the plaintiffs' First Amendment rights, the plaintiffs are entitled to attorneys' fees and costs incurred in this suit. 42 U.S.C. §§ 1983, 1988.

### Prayer for Relief

Therefore, the plaintiffs respectfully ask that this Court:

1.     Declaring Minnesota's executive orders restricting church attendance and religious activities in or by houses of worship, by religious leaders and by worshipers are unconstitutional under the First and Fourteenth Amendments of the U.S. Constitution;

2.     Declaring Minnesota Statutes § 12.31 and the Governor's Executive Orders 20-74 and 20-81, issued thereunder, as violative of the Minnesota Constitution;

3.     Grant a preliminary and permanent injunction enjoining the defendants from enforcing the Minnesota's executive orders restricting church attendance and religious activities in or by houses of worship, religious leaders and worshipers;

4.     Award the plaintiffs all costs, expenses, and expert witness fees allowed by law;

5.     Award the plaintiffs attorneys' fees and costs allowed under 42 U.S.C. § 1988;

6.      Award the plaintiffs attorneys' fees and costs allowed under Minn. Stat. §§

15.471–15.474; and

7.      Award the plaintiffs such other and further relief as this Court deems just.

Dated: August 13, 2020.
                                 /s/Erick G. Kaardal
                                 Erick G. Kaardal, 229647
                                 Mohrman, Kaardal & Erickson, P.A.
                                 *Special Counsel to Thomas More Society
                                 150 South Fifth Street, Suite 3100
                                 Minneapolis, MN 55402
                                 Telephone:   (612) 341-1074
                                 Facsimile:    (612) 341-1076
                                 Email:         kaardal@mklaw.com
                                 Attorneys for the Plaintiffs