# STATE OF MINNESOTA
Executive Department



## Governor Tim Walz

### Emergency Executive Order 20-74

### Continuing to Safely Reopen Minnesota's Economy and Ensure Safe Non-Work Activities during the COVID-19 Peacetime Emergency

**I, Tim Walz, Governor of the State of Minnesota,** by the authority vested in me by the Constitution and applicable statutes, issue the following Executive Order:

The COVID-19 pandemic continues to present an unprecedented and rapidly evolving challenge to our State. Since the World Health Organization characterized the COVID-19 outbreak as a pandemic on March 11, 2020, confirmed cases of COVID-19 in Minnesota have rapidly increased. On March 15, 2020, Minnesota detected the first confirmed cases caused by "community spread"—infections not epidemiologically linked to overseas travel. By March 17, 2020, all fifty states had reported a confirmed case of COVID-19, and on March 21, 2020, the Minnesota Department of Health ("MDH") announced the first confirmed fatality due to COVID-19 in Minnesota.

The President declared a national emergency related to COVID-19 on March 13, 2020. Since then, and for the first time in history, the President has approved major disaster declarations for all fifty states and the District of Columbia. In concert with these federal actions and the actions of states across the nation, Minnesota has taken proactive steps to ensure that we remain ahead of the curve. On March 13, 2020, I issued Executive Order 20-01 and declared a peacetime emergency because this pandemic, an act of nature, endangers the lives of Minnesotans, and local resources were—and continue to be—inadequate to address the threat. After notifying the Legislature, on April 13, 2020 and again on May 13, 2020, I issued Executive Orders extending the peacetime emergency declared in Executive Order 20-01.

The need to slow the spread of the virus required the closure of certain non-critical businesses in our economy. Although Minnesota's April unemployment rate was the second lowest in the country, over 700,000 Minnesotans have applied for unemployment insurance since March 16, 2020. In Executive Order 20-33, seeking to balance public health needs and economic considerations, we began planning to allow more Minnesota workers to safely return to work. We drafted guidelines and requirements for appropriate social distancing, hygiene, and public health best practices. Executive Order 20-38 expanded exemptions for outdoor recreational activities and facilities, and Executive Orders 20-40, 20-48, 20-56, and 20-63 allowed for the

1



EXHIBIT

A

gradual reopening of certain non-critical businesses that planned for and provided safe workplaces.

Our increased preparedness to treat those most vulnerable to COVID-19 allows us to continue slowly and safely reopening our economy in accordance with guidance from MDH, the Department of Employment and Economic Development ("DEED"), and the Department of Labor and Industry ("DLI"). Businesses reentering the economy must ensure compliance with the Minnesota Occupational Safety and Health Act of 1973, Minnesota Statutes 2019, Chapter 182 ("Minnesota OSHA Standards"), in addition to guidelines related to COVID-19 set forth by MDH and the Centers for Disease Control and Prevention ("MDH and CDC Guidelines").

Despite the progress we have made since declaring the COVID-19 peacetime emergency, certain establishments—including those in which people gather and linger, those with communal facilities, and those in which close physical contact is expected—continue to pose a public health risk. We continue to carefully consider and provide opportunities for such businesses to scale up their operations.

Likewise, certain non-work activities outside of the home are conducive to social distancing and hygiene, while others raise significant public health risks. Indoor activities pose higher risks than outdoor activities. Activities resulting in increased respiration rates pose higher risk than sedentary activities. Unpredictable settings are riskier than more predictable settings. Large social gatherings for extended time periods increase the risk of transmission between households. But the risks of transmission are diminished in transitory settings, such as retail establishments, where individual interactions and contact are more limited in duration.

In Minnesota Statutes 2019, section 12.02, the Minnesota Legislature conferred upon the Governor emergency powers to "(1) ensure that preparations of this state will be adequate to deal with disasters, (2) generally protect the public peace, health, and safety, and (3) preserve the lives and property of the people of the state." Pursuant to Minnesota Statutes 2019, section 12.21, subdivision 1, the Governor has general authority to control the state's emergency management as well as carry out the provisions of Minnesota's Emergency Management Act.

Minnesota Statutes 2019, section 12.21, subdivision 3(7), authorizes the Governor to cooperate with federal and state agencies in "matters pertaining to the emergency management of the state and nation." This includes "the direction or control of . . . the conduct of persons in the state, including entrance or exit from any stricken or threatened public place, occupancy of facilities, and . . . public meetings or gatherings." Pursuant to subdivision 3 of that same section, the Governor may "make, amend, and rescind the necessary orders and rules to carry out the provisions" of Minnesota Statutes 2019, Chapter 12. When approved by the Executive Council and filed in the Office of the Secretary of State, such orders and rules have the force and effect of law during the peacetime emergency. Any inconsistent rules or ordinances of any agency or political subdivision of the state are suspended during the pendency of the emergency

For these reasons, I order as follows:

1. Executive Order 20-63 is rescinded as of Tuesday, June 9, 2020 at 11:59 pm.

2. Paragraphs 6 through 8 of this Executive Order are effective as of Tuesday, June 9, 2020 at 11:59 pm.

3. **Masks and face coverings strongly encouraged.** I strongly encourage all Minnesotans to wear a manufactured or homemade cloth face covering when they leave their homes and travel to any public setting where social distancing measures are difficult to maintain (*e.g.*, grocery stores and pharmacies) and to follow face covering guidelines issued by MDH and the CDC until this Executive Order is rescinded. As set forth below, Minnesotans may be required to wear cloth face coverings in certain settings. Such face masks and coverings are for source control (to help limit the person wearing the covering from infecting others). They are not yet known to be protective of the wearer and therefore are not personal protective equipment.

4. **At-risk persons.** All persons currently living within the State of Minnesota who are at risk of severe illness from COVID-19, as defined by Executive Order 20-55, are strongly urged to stay at home or in their place of residence and follow the provisions of Executive Order 20-55.

5. **Definitions.**

   a. "Home," "homes," "residence," and "residences" are broadly defined to include mobile homes, hotels, motels, shared rental units, shelters, and similar facilities, to the extent they are used for lodging.

   b. "Worker" and "workers" are broadly defined to include owners, proprietors, employees, contractors, vendors, volunteers, and interns.

   c. "Business" and "businesses" are broadly defined to include entities that employ or engage workers, including private-sector entities, public-sector entities, non-profit entities, and state, county, and local governments.

   d. "Critical Businesses" are all businesses whose workers qualified for a Critical Sector exemption under paragraph 6 of Executive Order 20-48.

   e. "Non-Critical Businesses" are all businesses that are not Critical Businesses or Places of Public Accommodation.

   f. "Place of Public Accommodation" means a business, or an educational, refreshment, entertainment, recreation facility, or an institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. Places of Public Accommodation include, but are not limited to, the businesses identified in paragraph 7.c of this Executive Order.

   g. "Establishments Providing Personal Care Services" are broadly defined to include tanning establishments, body art establishments, tattoo parlors,

piercing parlors, businesses offering massage therapy or similar body work, spas, salons, nail salons, cosmetology salons, esthetician salons, advanced practice esthetician salons, eyelash salons, and barber shops. This includes, but is not limited to, all salons and shops licensed by the Minnesota Board of Cosmetologist Examiners and the Minnesota Board of Barber Examiners.

6. **Activities outside of the home.** Mindful that we must continue to limit social interactions to protect public health, individuals may leave their homes for activities, subject to the requirements and guidelines set forth below. These requirements may be clarified, as deemed necessary by the Governor, to ensure the health, safety, and security of all Minnesotans. Clarifications will be available for public review at the State's COVID-19 website (https://mn.gov/covid19/).

   a. **Guidelines.** Individuals engaging in activities outside of the home must follow the requirements of this Executive Order and MDH and CDC Guidelines. Individuals engaging in outdoor recreational activities must follow the Minnesota Department of Natural Resources ("DNR") and MDH guidelines on outdoor recreation for facilities and the public ("Outdoor Recreation Guidelines") available at the Stay Safe Minnesota website (https://staysafe.mn.gov).

   b. **Unnecessary travel strongly discouraged.** Consistent with federal guidance and to protect our neighbors, Minnesotans are encouraged to stay close to home and are strongly discouraged from engaging in unnecessary travel.

   c. **Social gatherings.** All indoor social gatherings of more than 10 people and all outdoor social gatherings of more than 25 people are prohibited, except as set forth below. Social gatherings are groups of individuals, who are not members of the same household, congregated together for a common or coordinated social, community, or leisure purpose—even if social distancing can be maintained. This prohibition includes planned and spontaneous gatherings as well as public and private gatherings. Prohibited gatherings do not include commercial activity by workers and customers of Critical and Non-Critical Businesses and Places of Public Accommodation.

      i. **Legislative and other governmental meetings.** The limits on gatherings in this Executive Order do not apply to legislative and other governmental meetings. Remote meetings are strongly encouraged whenever possible as permitted by state or local authority.

      ii. **The Judicial Branch.** The limits on gatherings in this Executive Order do not apply to proceedings held by the Minnesota Judicial Branch. Proceedings held by the Judicial Branch are subject to the policies established by the chief justice and will occur as directed by court order. Individuals may appear as directed by a Minnesota state court, including to serve as a juror, appear as a party, as a witness, or

4

as legal counsel on behalf of a party, or otherwise to comply as directed by a court order, subpoena, or summons.

iii. **Federal activities**. Nothing in this Executive Order will be construed to limit, prohibit, or restrict in any way the operations of the federal government or the movement of federal officials in Minnesota while acting in their official capacity, including federal judicial, legislative, and executive staff and personnel.

iv. **Drive-in gatherings.** To enable safe congregation of people, drive-in gatherings are permitted, provided that all participants remain within their own vehicles and follow the applicable guidance available at the Stay Safe Minnesota website (https://staysafe.mn.gov).

v. **Weddings, funerals, and services.** Places of worship, funeral homes, and other venues that offer gathering space for weddings, funerals, or planned services such as worship, rituals, prayer meetings, or scripture studies, may host such weddings, funerals, or services exceeding the limits set forth above, provided that they adhere to the following requirements:

   A. In all settings, ensure a minimum of 6 feet of physical distancing between households.

   B. In indoor settings, occupancy must not exceed 50 percent of the normal occupant capacity as determined by the fire marshal, with a maximum of 250 people in a single self-contained space.

   C. In outdoor settings, gatherings must not exceed 250 individuals.

   D. Develop and implement a COVID-19 Preparedness Plan in accordance with applicable guidance available at the Stay Safe Minnesota website (https://staysafe.mn.gov).

d. **Tribal Activities and Lands**.

   i. Activities by tribal members within the boundaries of their tribal reservations are exempt from the restrictions in this Executive Order but may be subject to restrictions by tribal authorities.

   ii. Activities within the boundaries of federal land held in trust for one of the 11 Minnesota Tribal Nations are exempt from the restrictions in this Executive Order but may be subject to restrictions by tribal authorities.

      iii.    Activities by tribal members to exercise their federal treaty rights within the boundaries of their treaty territory (also known as "ceded territory") are exempt from the restrictions in this Executive Order but may be subject to restrictions by applicable tribal authorities.

      iv.    Tribal members may travel to and from their tribal reservations in accordance with applicable tribal law.

7. **Workers and businesses**. Workers and businesses are subject to the requirements set forth below. These requirements may be clarified, as deemed necessary by the Governor, to ensure the health, safety, and security of all Minnesotans. Clarifications will be available for public review at the State's COVID-19 website (https://mn.gov/covid19/).

    a.    **Continue to work from home whenever possible**. Any worker who can work from home must do so.

    b.    **Safe work**. The protections noted in Executive Order 20-54 (Protecting Workers from Unsafe Working Conditions and Retaliation) remain in full force and effect. All work must be conducted in a manner that adheres to Minnesota OSHA Standards and MDH and CDC Guidelines, including social distancing and hygiene practices. Under existing law and authority, DLI may issue citations, civil penalties, or closure orders to places of employment with unsafe or unhealthy conditions, and DLI may penalize businesses that retaliate against employees who raise safety and health concerns.

    c.    **Places of Public Accommodation**. Places of Public Accommodation are subject to the following requirements and limitations:

      i.    **All Places of Public Accommodation remaining open or opening under this Executive Order must adhere to the requirements set forth in paragraph 7.e of this order**, including development and implementation of a COVID-19 Preparedness Plan in accordance with applicable guidance available at the Stay Safe Minnesota website (https://staysafe.mn.gov).

      ii.    For the purposes of this Executive Order, the following establishments and facilities are not Places of Public Accommodation:

          A.    Establishments and facilities that offer food and beverage not for on-premises consumption, including grocery stores, markets, convenience stores, pharmacies, drug stores, and food pantries, other than those portions of the Place of Public Accommodation otherwise subject to the requirements of this paragraph 7.c.

6

    B. Health care facilities, child care facilities, residential care facilities, congregate care facilities, and juvenile justice facilities.

    C. Crisis shelters, soup kitchens, or similar institutions.

    D. Restaurants and food courts inside the secured zones of airports.

iii. Places of Public Accommodation, which would otherwise be subject to the restrictions in this Executive Order, may be exempted from such restrictions if they have been repurposed to exclusively provide services permitted under paragraph 7.c.ii.

iv. Places of Public Accommodation subject to this Executive Order are encouraged to offer food and beverage using delivery service, window service, walk-up service, drive-through service, or drive-up service, and to use precautions in doing so to mitigate the potential transmission of COVID-19, including social distancing.

v. Barbershops, salons, and other Establishments Providing Personal Care Services may be open. Occupancy must not exceed 50 percent of the normal occupant capacity as determined by the fire marshal, with a maximum of 250 people in a single self-contained space. Workers, customers, and clients must follow face-covering requirements as set forth in the applicable guidance available at the Stay Safe Minnesota website (https://staysafe.mn.gov).

vi. Restaurants, food courts, cafes, coffeehouses, bars, taverns, brewer taprooms, micro distiller cocktail rooms, farm wineries, craft wineries, cideries, golf courses and clubs, dining clubs tobacco product shops, and other Places of Public Accommodation offering food, beverages (including alcoholic beverages), or tobacco products for on-premises consumption, may provide indoor and outdoor service, provided that they adhere to the following requirements:

    A. Occupancy of any indoor space must not exceed 50 percent of the normal occupant capacity as determined by the fire marshal, with a maximum of 250 people in a single self-contained space.

    B. Occupancy of any outdoor space must ensure that the number of customers at any one time is limited to the number for whom physical distancing of 6 feet can be maintained between tables, not to exceed 250 people.

C.  Workers and customers must follow face-covering requirements as set forth in the applicable guidance available at the Stay Safe Minnesota website (https://staysafe.mn.gov).

D.  All establishments must follow applicable state and local laws and regulations. Local governments are encouraged to work collaboratively with establishments to allow for outdoor service.

E.  The capacity limitation on indoor activity extends to the sale and play of lawful games as provided under Minnesota Statutes 2019, section 349.12. This does not include outdoor and on-premises sale and play.

F.  Pursuant to Minnesota Statutes 2019, section 349.12, subdivision 3a, veterans or fraternal organizations may lend gambling funds to their general fund accounts for up to one year to pay for allowable expenses necessary to reopen such organizations' permitted premises as set forth in the guidance available at the Gambling Control Board's website (https://mn.gov/gcb/).

vii.  Indoor and outdoor pools may open to the general public only in accordance with industry guidance available on the Stay Safe Minnesota website (https://staysafe.mn.gov).

viii.  Gymnasiums, fitness centers, recreation centers, indoor and outdoor sports facilities, indoor climbing facilities, trampoline parks indoor and outdoor exercise facilities, and exercise studios may open to the general public only in accordance with industry guidance available on the Stay Safe Minnesota website (https://staysafe.mn.gov).

ix.  Venues providing indoor events, entertainment, or recreation such as theaters, cinemas, concert halls, museums, performance venues, stadiums, arcades, and bowling alleys may open to the general public only in accordance with industry guidance available on the Stay Safe Minnesota website (https://staysafe.mn.gov).

x.  Venues (including racetracks) providing outdoor events, entertainment, or recreation, paintball, go-karts, mini-golf, and amusement parks may open to the general public only in accordance with industry guidance available on the Stay Safe Minnesota website (https://staysafe.mn.gov).

d.  **Critical Businesses**. Businesses whose workers qualified for a Critical Sector exemption under paragraph 6 of Executive Order 20-48 may continue to operate in the same manner as provided in Executive Order 20-48.

    i.    Beginning on June 29, 2020, all Critical Businesses must have developed and implemented a COVID-19 Preparedness Plan as set forth in paragraph 7.e of this Executive Order and in accordance with the industry guidance currently posted to the Stay Safe Minnesota website (https://staysafe.mn.gov) and any additional applicable industry guidance that will be posted to the Stay Safe Minnesota website (https://staysafe.mn.gov) on or before June 15, 2020 as provided in paragraph 7.d.ii of this Executive Order.

    ii.    In consultation with relevant agencies, the Commissioners of Health, Employment and Economic Development, and Labor and Industry are directed to prepare and publish additional industry guidance for Critical Businesses, as necessary, no later than June 15, 2020. All such guidance will be posted to the Stay Safe Minnesota website (https://staysafe.mn.gov).

    iii.    For state licensed or state certified Critical Businesses that are operating under and adhering to existing policies and procedures or requirements related to health and safety, including requirements to establish and implement COVID-19 Preparedness Plans, state agencies are directed to develop guidance and template addendum plans that address unique risks and hazards of COVID-19 for their operations. Relevant agencies must publish such guidance no later than June 15, 2020. All such guidance will be posted to the Stay Safe Minnesota website (https://staysafe.mn.gov).

e.    **Non-Critical Businesses**. If it has not done so already, a Non-Critical Business choosing to open or remain open must establish and implement a COVID-19 Preparedness Plan ("Plan"). Each Plan must provide for the business's implementation of guidance for their specific industry or, if there is no specific guidance, general guidance for all businesses, as well as Minnesota OSHA Standards and MDH and CDC Guidelines in their workplaces. These requirements are set forth in guidance ("Plan Guidance") available on the Stay Safe Minnesota website (https://staysafe.mn.gov).

    i.    **Required Plan content**. As set forth in the Plan Guidance, at a minimum, each Plan must adequately address the following areas:

        A.    **Require work from home whenever possible**. All Plans must ensure that all workers who can work from home continue to do so.

        B.    **Ensure that sick workers stay home**. All Plans must establish policies and procedures, including health screenings, that prevent sick workers from entering the workplace.

    C. **Social distancing**. All Plans must establish social distancing policies and procedures.

    D. **Worker hygiene and source control**. All Plans must establish hygiene and source control policies for workers.

    E. **Cleaning, disinfection, and ventilation protocols**. All Plans must establish cleaning, disinfection, and ventilation protocols for areas within the workplace.

ii.   **Customer facing businesses**. All Non-Critical Businesses that are customer facing (*i.e.*, businesses that have in-person customer interactions) must include additional Plan provisions to keep the public and workers safe as set forth in the applicable guidance available on the Stay Safe Minnesota website (https://staysafe.mn.gov). This includes requirements that workers and customers must maintain physical distancing of 6 feet and that store occupancy must not exceed limits set forth in the guidance. In customer facing businesses that share common areas, such as malls, all Plans must similarly include a facility occupancy that must not exceed the limits set forth in the guidance and provide an enhanced sanitizing, cleaning, and disinfecting regimen consistent with Minnesota OSHA Standards and MDH and CDC Guidelines for those common areas. All Plans must also include signage in common areas to discourage congregating.

iii.   **Household services businesses**. All Non-Critical Businesses that provide household services (*e.g.*, housecleaning, maid services, and piano tuners) must also develop Plan provisions intended to keep customers and workers safe as set forth in the applicable guidance available on the Stay Safe Minnesota website (https://staysafe.mn.gov).

iv.   **Optional template**. A template COVID-19 Preparedness Plan, which covers the above requirements, is available as part of the Plan Guidance, available on the Stay Safe Minnesota website (https://staysafe.mn.gov).

v.   **Certification and signature**. Senior management responsible for implementing the Plan must sign and certify the Plan, affirming their commitment to implement and follow the Plan.

vi.   **Dissemination and posting**. Each Non-Critical Business must provide its Plan, in writing, to all workers, and the Plan must be posted at all of the business's workplaces in locations that will allow for the Plan to be readily reviewed by all workers. Where physical posting is impracticable, the Plan can be posted electronically, provided that the Plan is received by all workers and remains available for their review.

vii. **Training**. Each Non-Critical Business must ensure that training is provided to workers on the contents of its Plan and required procedures, so that all workers understand and are able to perform the precautions necessary to protect themselves and their co-workers. This training should be easy to understand and available in the appropriate language and literacy level for all workers. Businesses should also take steps to supervise workers and ensure that workers understand and adhere to necessary precautions to prevent COVID-19 transmission. Documentation demonstrating compliance with this training requirement must be maintained and made available to regulatory authorities and public safety officers, including DLI, upon request.

viii. **Compliance**. Workers and management must work together to ensure compliance with the Plan, implement all protocols, policies, and procedures, and create a safe and healthy work environment.

ix. **Availability to regulatory authorities and public safety officers**. Non-Critical Businesses do not need to submit their Plans for preapproval. Upon request, Non-Critical Businesses must make their Plans available to regulatory authorities and public safety officers, including DLI.

x. In the event of a complaint or dispute related to a Non-Critical Business's Plan, DLI is authorized to determine whether the Plan adequately implements the applicable guidance, Minnesota OSHA Standards and MDH and CDC Guidelines in its workplaces.

f. **Youth Programs**. This Executive Order intends to allow as many summer programs for youth as can safely be provided. Youth Programs intending to operate must do so in accordance with the following requirements:

i. "Youth Programs" means programs providing care or enrichment to children or adolescents such as day camps, summer activities, and recreational or educational classes that require registration and have on-site supervision. "Youth Programs" does not include licensed child care facilities or school-district summer learning programs.

ii. Youth Programs must adhere to the requirements set forth in paragraph 7.e of this Executive Order, including development and implementation of a COVID-19 Preparedness Plan in accordance with guidance for youth and student programs available on MDH's website (https://www.health.state.mn.us/diseases/coronavirus/schools/). COVID-19 Preparedness Plans must be distributed, available for review, and followed by participants and their parents or guardians.

iii. Youth Programs must comply with any public health restrictions implemented by the manager or owner of property or facilities used by

11

the program, including any restrictions set by school districts on the use of their facilities, and adhere to guidance for youth and student programs available on MDH's website (https://www.health.state.mn.us/diseases/coronavirus/schools/).

g. **Organized Youth Sports**. Organized Youth Sports organizations and programs intending to operate must do so in accordance with the following requirements:

  i. "Organized Youth Sports" means any sports activity, where participants are children or adolescents, organized by an entity, association, club, or organization providing for registration of participants and oversight on a regular basis for a defined period of time. Sports activities within this definition include all sports offered by the Minnesota State High School League as well as dance, cheerleading, and other sports traditionally offered by supplemental associations or organizations.

  ii. Entities, associations, organizations, and clubs that provide Organized Youth Sports must adhere to the requirements set forth in paragraph 7.e of this Executive Order, including development and implementation of a COVID-19 Preparedness Plan in accordance with applicable guidance for youth sports available on the Stay Safe Minnesota website (https://staysafe.mn.gov). COVID-19 Preparedness Plans must be distributed and available for review by participants and their parents or guardians.

  iii. Entities, associations, organizations, and clubs that provide Organized Youth Sports must ensure that all trainers and coaches understand and follow their COVID-19 Preparedness Plan and related guidance.

  iv. Indoor or outdoor facilities that support Organized Youth Sports must also adhere to the requirements set forth in paragraph 7.e of this Executive Order, including development and implementation of a COVID-19 Preparedness Plan in accordance with applicable guidance for youth sports available on the Stay Safe Minnesota website (https://staysafe.mn.gov). COVID-19 Preparedness Plans must be distributed to, available for review, and followed by entities, associations, organizations, and clubs that provide Organized Youth Sports.

h. **Organized Adult Sports**. Organized Adult Sports organizations and programs intending to operate must do so in accordance with the following requirements:

  i. "Organized Adult Sports" means any sports activity, where participants are adults, organized by an entity, association, club, or

organization providing for registration of participants and oversight on a regular basis for a defined period of time.

ii. Entities, associations, organizations, and clubs that provide Organized Adult Sports must adhere to the requirements set forth in paragraph 7.e of this Executive Order, including development and implementation of a COVID-19 Preparedness Plan in accordance with applicable guidance for adult sports available on the Stay Safe Minnesota website (https://staysafe.mn.gov). COVID-19 Preparedness Plans must be distributed and available for review by participants or guardians.

iii. Entities, associations, organizations, and clubs that provide Organized Adult Sports must ensure that all trainers and coaches understand their COVID-19 Preparedness Plan and related guidance.

iv. Indoor or outdoor facilities that support Organized Adult Sports must also adhere to the requirements set forth in paragraph 7.e of this Executive Order, including the development and implementation of a COVID-19 Preparedness Plan in accordance with applicable guidance for adult sports available on the Stay Safe Minnesota website (https://staysafe.mn.gov). COVID-19 Preparedness Plans must be distributed to, available for review, and followed by entities, associations, organizations, and clubs that provide Organized Adult Sports

i. **Higher education institutions**. To the extent higher education classes cannot be provided through distance learning, higher education institutions, in consultation with their governing boards, the Office of Higher Education ("OHE"), and MDH, may offer in-person classes or activities consisting of no more than 25 people. Education and training programs not registered or licensed with OHE or part of the Minnesota State Colleges and Universities or University of Minnesota systems must follow the guidance provided by the state agency or board under which they are authorized to operate.

i. **Higher education definitions**. For the purposes of paragraph 7.i of this Executive Order:

A. "Higher education institution" means all post-secondary institutions, including but not limited to institutions licensed and registered with the OHE, with a physical campus in the State.

B. "Staff and instructors" means all employees, contractors, and volunteers of a higher education institution, including but not limited to janitorial and cleaning professionals, secretarial and administrative professionals, instructors, instructor assistants,

researchers, research assistants, graduate assistants, faculty, and administrators.

C. "Students" means any person enrolled at a higher education institution.

D. "Activities" includes, but is not limited to, testing, short-term training programs, student services, advising, internships, clinical rotations/placements, customized training, internships, campus visits, programs, credit and non-credit classes, and all research activities and functions.

ii. **Requirements for higher education institutions**. Institutions of higher education should continue to establish and implement a higher education institution COVID-19 Preparedness Plan ("Higher Ed Plan"). Each Higher Ed Plan must provide for implementation of Minnesota OSHA Standards and MDH and CDC Guidelines in classrooms, labs, or other areas that students and staff may visit. Such requirements, which are adaptable to higher education institutions, are set forth in the general guidance available at the Stay Safe Minnesota website (https://staysafe.mn.gov) and other applicable guidelines.

A. **Required Higher Ed Plan content**. As set forth in the Plan Guidance, at a minimum, each Higher Ed Plan must adequately address the following areas:

1. **Require distance learning wherever possible**. Each Higher Ed Plan must require that distance learning continues for all students when possible. If in-person indoor or outdoor activities are required, such activities must be subject to limitations set forth by relevant OHE and MDH guidance.

2. **Ensure that sick students and institution staff and instructors stay home**. Each Higher Ed Plan must establish policies and procedures, including health screenings, that prevent sick students or institution staff and instructors from entering the institution for in-person or on-site activities.

3. **Social distancing**. Each Higher Ed Plan must implement social distancing policies and procedures set forth by the CDC and MDH. Such Plans must also include signage in common areas to discourage gathering. Each Higher Ed Plan should encourage all students, visitors, staff, and instructors to wear masks or face coverings.

          4. **Cleaning and disinfection protocols**. Each Higher Ed Plan must establish cleaning and disinfection protocols for areas within the institution where students, staff, and instructors may visit and provide an enhanced sanitizing, cleaning, and disinfecting regimen consistent with Minnesota OSHA Standards and MDH and CDC Guidelines for common areas.

    iii. **Certification and signature**. Institutional leadership responsible for implementing the Higher Ed Plan must sign and certify such Higher Ed Plan, affirming their commitment to implement and follow the Higher Ed Plan.

    iv. **Dissemination and posting**. A higher education institution must make its Higher Ed Plan available according to applicable guidelines.

    v. **Training**. Higher education institutions must ensure that training is provided to staff and instructors on the contents of their Higher Ed Plan according to applicable guidelines.

8. **Outdoor recreational activities and associated facilities**. Notwithstanding paragraph 7.c, the below facilities are permitted to be open and do business, provided that they adhere to paragraphs 6 and 7 of this Executive Order and the Outdoor Recreation Guidelines available at the Stay Safe Minnesota website (https://staysafe.mn.gov). **Indoor facilities** associated with outdoor recreational facilities must comply with paragraphs 6 and 7 of this Executive Order, as applicable. I encourage public outdoor recreational facilities to be open for all Minnesotans, including families and children, and direct all individuals utilizing such facilities to follow the Outdoor Recreation Guidelines. All outdoor recreational activities and facilities must also comply with Minnesota law, including but not limited to license and permit requirements, invasive species regulations, and park rules.

    a. Minnesota State Parks, Trails, State Forests, State Recreation Areas, Wildlife Management Areas, Scientific and Natural Areas, and other State managed recreational lands.

    b. Locally, regionally, and privately managed parks and trails.

    c. State, regional, or local public water accesses.

    d. Public and private marinas and docks that provide storage, docking, and mooring services to slip owners, seasonal renters, and the general public, as well as facilities that provide safety-related services including fueling, emergency dockage, and sanitary pump-out stations.

    e. Public and private golf courses and outdoor driving ranges.

    f. Ski areas.

g.  Off-highway vehicles, snowmobiles, and watercraft repair shops, sales facilities, and showrooms.

h.  Lake service providers to install, repair, and remove docks, boatlifts, and other water related equipment or deliver boats.

i.  Bait and tackle shops.

j.  Outdoor shooting ranges and game farms.

k.  Outdoor recreational equipment rental outlets. Equipment may be rented but only if the equipment can be effectively sanitized between uses. Such outlets must implement clear check-in and check-out procedures that minimize contact between customers and workers. Any rentals must be conducted in accordance with the Outdoor Recreation Guidelines.

l.  Dispersed and remote camping sites in accordance with the Outdoor Recreation Guidelines. A dispersed campsite is a single campsite, not in a developed campground, used for overnight camping. A remote campsite is a designated backpack or watercraft campsite, not in a developed campground, used for overnight camping.

m. Public and private campgrounds that have adopted a COVID-19 Preparedness Plan in accordance with the Guidance for Campgrounds website (https://www.dnr.state.mn.us/aboutdnr/safely-opening-outdoor-recreation.html).

n.  Charter boats and launches that have adopted a COVID-19 Preparedness Plan in accordance with Guidance for Charter and Launch Boats website (https://www.dnr.state.mn.us/aboutdnr/safely-opening-outdoor-recreation.html).

o.  Outdoor tournaments, competitions, practices, and sports that allow for social distancing, that do not require gatherings prohibited by paragraph 6.c, and that adhere to the Outdoor Recreation Guidelines. This paragraph does not apply to activities covered by paragraphs 7.f through 7.h.

p.  Guided and instructional activities such as guided fishing or birding that do not require gatherings prohibited by paragraph 6.c, adhere to social distancing requirements, and are conducted in accordance with the Outdoor Recreation Guidelines. This paragraph does not apply to activities covered by paragraphs 7.c.vii or 7.f.

q.  Any other outdoor recreation activities and facilities that may be designated in the Outdoor Recreation Guidelines.

9. **Respect for workers.** Minnesotans must respect the efforts of employers and businesses to protect the safety of their workers and customers by complying with

those businesses' social distancing and hygiene instructions. Employers and businesses must post social distancing and hygiene instructions at entrances and in locations that can be easily seen by customers and visitors.

10. **Enhanced local measures permitted**. Nothing in this Executive Order or previous Executive Orders should be construed to prohibit or prevent political subdivisions from implementing, within their jurisdictions and pursuant to applicable law and authority, restrictions beyond the restrictions contained in this Executive Order, as long as those additional restrictions have a real or substantial relation to the public health crisis caused by COVID-19. Pursuant to Minnesota Statutes 2019, section 12.32, political subdivisions may not relax or reduce this Executive Order's restrictions. In other words, to the extent that they have authority to do so, cities and other political subdivisions may take actions that are more protective of the public health but may not take actions that are less protective of the public health.

11. **Enforcement**. I urge all Minnesotans to voluntarily comply with this Executive Order. Pursuant to Minnesota Statutes 2019, section 12.45, an individual who willfully violates this Executive Order is guilty of a misdemeanor and upon conviction must be punished by a fine not to exceed $1,000 or by imprisonment for not more than 90 days. Any business owner, manager, or supervisor who requires or encourages any of their employees, contractors, vendors, volunteers, or interns to violate this Executive Order is guilty of a gross misdemeanor and upon conviction must be punished by a fine not to exceed $3,000 or by imprisonment for not more than a year. In addition to those criminal penalties, the Attorney General, as well as city and county attorneys, may seek any civil relief available pursuant to Minnesota Statutes 2019, section 8.31, for violations of this Executive Order, including civil penalties up to $25,000 per occurrence from businesses and injunctive relief. State and local licensing and regulatory entities that inspect businesses for compliance with rules and codes to protect the public are encouraged to assess regulated businesses' compliance with this Executive Order and use existing enforcement tools to bring businesses into compliance. Nothing in this Executive Order is intended to encourage or allow law enforcement to transgress individual constitutional rights.

Pursuant to Minnesota Statutes 2019, section 4.035, subdivision 2, and section 12.32, this Executive Order is effective immediately upon approval by the Executive Council. It remains in effect until the peacetime emergency declared in Executive Order 20-01 is terminated or until it is rescinded by proper authority.

A determination that any provision of this Executive Order is invalid will not affect the enforceability of any other provision of this Executive Order. Rather, the invalid provision will be modified to the extent necessary so that it is enforceable.

Signed on June 5, 2020.

**Tim Walz**
Governor


Filed According to Law:

**Steve Simon**
Secretary of State


Approved by the Executive Council on June 5, 2020:

**Alice Roberts-Davis**
Secretary, Executive Council


Filed June 5, 2020
Office of the Minnesota
Secretary of State
Steve Simon

# STATE OF MINNESOTA
## Executive Department



# Governor Tim Walz

**Emergency Executive Order 20-81**

**Requiring Minnesotans to Wear a Face Covering in Certain Settings to Prevent the Spread of COVID-19**

**I, Tim Walz, Governor of the State of Minnesota,** by the authority vested in me by the Constitution and applicable statutes, issue the following Executive Order:

The COVID-19 pandemic continues to present an unprecedented and rapidly evolving challenge to our State. Since the World Health Organization characterized the COVID-19 outbreak as a pandemic on March 11, 2020, confirmed cases of COVID-19 in Minnesota have rapidly increased. On March 15, 2020, Minnesota detected the first confirmed cases caused by "community spread"—infections not epidemiologically linked to overseas travel. By March 17, 2020, all fifty states had reported a confirmed case of COVID-19, and on March 21, 2020, the Minnesota Department of Health ("MDH") announced the first confirmed fatality due to COVID-19 in Minnesota.

The President declared a national emergency related to COVID-19 on March 13, 2020. Since then, and for the first time in history, the President has approved major disaster declarations for all fifty states and the District of Columbia. In concert with these federal actions and the actions of states across the nation, Minnesota has taken proactive steps to ensure that we remain ahead of the curve. On March 13, 2020, I issued Executive Order 20-01 and declared a peacetime emergency because this pandemic, an act of nature, endangers the lives of Minnesotans, and local resources were—and continue to be—inadequate to address the threat. After notifying the Legislature, on April 13, 2020, May 13, 2020, June 12, 2020, and July 13, 2020, I issued Executive Orders extending the peacetime emergency declared in Executive Order 20-01.

The need to slow the spread of the virus while we ensured that Minnesota had the resources and capacity to address a large outbreak initially required the closure of certain non-critical businesses in our economy. In Executive Order 20-33, seeking to balance public health needs and economic considerations, we began planning to allow more Minnesota workers to safely return to work. We drafted and implemented guidelines and requirements for appropriate social distancing, hygiene, and public health best practices. Executive Order 20-38 expanded exemptions for outdoor recreational activities and facilities, and Executive Orders 20-40, 20-48,



EXHIBIT

B

1

20-56, 20-63, and 20-74 allowed for the gradual reopening of certain non-critical businesses that planned for and provided safe workplaces.

The experience of other states shows that a COVID-19 surge can occur with little warning and disastrous consequences. Indeed, several states have had to reinstate limitations on businesses, gatherings, and activities as they have faced summer surges in COVID-19 cases. Although Minnesota had experienced a brief period of stable or decreasing numbers in COVID-19 cases, in the past week we have seen our cases begin to increase, with the largest single-day increase in cases in seven weeks reported on July 20, 2020. As such, we must continue to approach our reopening carefully, as the number of cases throughout the United States has increased rapidly in recent weeks. To that end, we know that certain public settings and establishments continue to pose a public health risk. In particular, the opportunities for COVID-19 transmission are elevated in confined indoor spaces, health care and congregate care facilities, settings where people gather and linger or where movement is unpredictable, and places where social distancing measures are not always possible. As we carefully consider and provide opportunities for a variety of businesses and other venues to scale up their operations, safety in these settings is a key priority.

According to the Centers for Disease Control and Prevention ("CDC"), face coverings are effective in preventing the transmission of respiratory droplets that may spread COVID-19. Recognizing the utility of face coverings to prevent wearers who are asymptomatic or pre-symptomatic, the Federal Occupational Health and Safety Administration recommends that employers encourage workers to wear face coverings at work.

Ideally, face coverings should be worn in combination with other infection control measures, including social distancing, but face coverings are especially important in settings where social distancing is difficult to maintain. As the CDC has explained, face coverings are most effective when they are worn by all individuals in public settings when around others outside of their households because many people infected with COVID-19 do not show symptoms. Consistent with this guidance, Minnesota has strongly recommended widespread use of face coverings since April. An increasing number of states are now mandating face coverings in certain settings to control the spread of COVID-19. As of July 17, 2020, 28 states, Washington D.C., and Puerto Rico have implemented a face covering requirement. With this order, we do the same to protect Minnesota.

In Minnesota Statutes 2019, section 12.02, the Minnesota Legislature conferred upon the Governor emergency powers to "(1) ensure that preparations of this state will be adequate to deal with disasters, (2) generally protect the public peace, health, and safety, and (3) preserve the lives and property of the people of the state." Pursuant to Minnesota Statutes 2019, section 12.21, subdivision 1, the Governor has general authority to control the state's emergency management as well as carry out the provisions of Minnesota's Emergency Management Act.

Minnesota Statutes 2019, section 12.21, subdivision 3(7), authorizes the Governor to cooperate with federal and state agencies in "matters pertaining to the emergency management of the state and nation." This includes "the direction or control of . . . the conduct of persons in the state, including entrance or exit from any stricken or threatened public place, occupancy of facilities, and . . . public meetings or gatherings." Pursuant to subdivision 3 of that same section, the Governor may "make, amend, and rescind the necessary orders and rules to carry out the

provisions" of Minnesota Statutes 2019, Chapter 12. When approved by the Executive Council and filed in the Office of the Secretary of State, such orders and rules have the force and effect of law during the peacetime emergency. Any inconsistent rules or ordinances of any agency or political subdivision of the state are suspended during the pendency of the emergency.

For these reasons, I order as follows:

1. Paragraph 3 of Executive Order 20-74 is rescinded as of Friday, July 24, 2020 at 11:59 p.m. All other provisions of Executive Order 20-74 remain in effect.

2. Beginning on Friday, July 24, 2020 at 11:59 p.m., Minnesotans must wear a face covering in indoor businesses and indoor public settings, as described in this order and the related industry guidance, available at the Stay Safe Minnesota website (https://staysafe.mn.gov), as well as any other guidance referenced in this order. Workers must also wear face coverings outdoors when it is not possible to maintain social distancing. When leaving home, Minnesotans are strongly encouraged to have a face covering with them at all times to be prepared to comply with the requirements of this Executive Order.

3. **Definitions.** For purposes of this Executive Order, the following terms are defined as follows:

   a. A "face covering" must be worn to cover the nose and mouth completely, and can include a paper or disposable face mask, a cloth face mask, a scarf, a bandanna, a neck gaiter, or a religious face covering. Minnesotans are encouraged to refer to CDC guidance on *How to Make Cloth Face Coverings*, available at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-to-make-cloth-face-covering.html. Medical-grade masks and respirators are sufficient face coverings, but to preserve adequate supplies, their purchase and use is discouraged for Minnesotans who do not work in a health care setting or in other occupations that require medical-grade protective equipment (*e.g.*, certain construction occupations). Masks that incorporate a valve designed to facilitate easy exhaling, mesh masks, or masks with openings, holes, visible gaps in the design or material, or vents are **not** sufficient face coverings because they allow exhaled droplets to be released into the air.

   b. "Business" and "businesses" are broadly defined to include entities that employ or engage workers, including private-sector entities, public-sector entities, non-profit entities, and state, county, and local governments.

   c. "Worker" and "workers" are broadly defined to include owners, proprietors, employees, contractors, vendors, volunteers, and interns.

   d. "Social distancing" means individuals keeping at least 6 feet of distance from other individuals who are not members of their household.

   e. "Household" means a group of individuals who share the same living unit.

3

     f.   "Living unit" or "living units" are broadly defined to include single family homes; mobile homes; shelters and similar facilities; family foster care homes; individual units of multi-unit dwellings; hotel or motel rooms; dormitory rooms; residential programs licensed under Minnesota Statutes 2019, Chapter 245D; and assigned units or rooms in a hospital, long-term care facility, residential treatment facility, or correctional facility. Additionally, a "living unit" or "living units" includes any other setting used as a residence and shared only with members of the same household.

     g.   "Higher education institution" means all post-secondary institutions, including but not limited to institutions licensed and registered with the Office of Higher Education, with a physical campus in the State.

4. **Federal activities.** Nothing in this Executive Order will be construed to limit, prohibit, or restrict in any way the operations of the federal government or the movement of federal officials in Minnesota while acting in their official capacity, including federal judicial, legislative, and executive staff and personnel.

5. **Legislative proceedings.** This Executive Order does not apply to Legislative proceedings and meetings.

6. **Judicial Branch.** This Executive Order does not apply to the Minnesota Judicial Branch. Requirements for face coverings in judicial branch facilities and at proceedings held by the judicial branch are subject to policies or orders of the Chief Justice.

7. **Tribal activities and lands**.

     a.   Activities by tribal members within the boundaries of their tribal reservations are exempt from the restrictions in this Executive Order but may be subject to restrictions by tribal authorities.

     b.   Activities within the boundaries of federal land held in trust for one of the 11 Minnesota Tribal Nations are exempt from the restrictions in this Executive Order but may be subject to restrictions by tribal authorities.

8. **Exempt individuals.** The following individuals are exempt from face covering requirements of this Executive Order:

     a.   Individuals with a medical condition, mental health condition, or disability that makes it unreasonable for the individual to maintain a face covering. This includes, but is not limited to, individuals who have a medical condition that compromises their ability to breathe, and individuals who are unconscious, incapacitated, or otherwise unable to remove a face covering without assistance. These individuals should consider using alternatives to face coverings, including clear face shields, and staying at home as much as possible.

    b.  Children who are five years old and under. Those who are under two-years-old should never wear a face covering due to the risk of suffocation. Those who are at least two are encouraged to wear a face covering if they can do so in compliance with CDC guidance on *How to Wear Cloth Face Coverings*, available at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-to-wear-cloth-face-coverings.html (*i.e.*, without frequently touching or removing the covering).

    c.  Individuals at their workplace when wearing a face covering would create a job hazard for the individual or others, as determined by local, state or federal regulators or workplace safety and health standards and guidelines.

9.  **Situations where face coverings are mandatory.** Except for individuals who are exempt under paragraph 8 of this Executive Order, and except for the circumstances described in paragraphs 10 through 12, Minnesotans are required to wear a face covering:

    a.  In an indoor business or public indoor space, including when waiting outdoors to enter an indoor business or public indoor space.

        i.  This requirement does not apply in living units except that (1) workers entering another person's living unit for a business purpose are required to wear a face covering when doing so; and (2) visitors, patients, residents, or inmates of hospitals, shelters or drop-in centers, long-term care facilities, residential treatment facilities, residential programs licensed under Minnesota Statutes 2019, Chapter 245D, or correctional facilities must wear a face covering even when in a living unit if required by the facility.

        ii.  This requirement also does not apply in a private vehicle that is being used for private purposes.

    b.  When riding on public transportation, in a taxi, in a ride-sharing vehicle, or in a vehicle that is being used for business purposes.

    c.  In any other business, venue, or public space which has opted to require a face covering when it would not otherwise be required by this Executive Order.

    d.  For workers only, when working outdoors in situations where social distancing cannot be maintained.

    e.  When applicable industry guidance, available on the Stay Safe Minnesota website (https://staysafe.mn.gov) specifically requires face coverings. In some instances, face shields may be required in addition to or instead of face coverings or may be allowed as an alternative to face coverings.

10. **Circumstances where mandatory face coverings may be temporarily removed.**
Face coverings required under Paragraph 9 of this Executive Order may be
temporarily removed under the following circumstances:

  a. When participating in organized sports in an indoor business or indoor public
  space while the level of exertion makes it difficult to wear a face covering.

  b. When exercising in an indoor business or public indoor space such as a gym
  or fitness center, while the level of exertion makes it difficult to wear a face
  covering, provided that social distancing is always maintained.

  c. When testifying, speaking, or performing in an indoor business or public
  indoor space, in situations or settings such as theaters, news conferences, legal
  proceedings, governmental meetings subject to the Open Meeting Law
  (Minnesota Statutes 2019, Chapter 13D), presentations, or lectures, provided
  that social distancing is always maintained. Face shields should be considered
  as an alternative in these situations.

  d. During practices or performances in an indoor business or indoor public space
  when a face covering cannot be used while playing a musical instrument,
  provided that social distancing is always maintained.

  e. During activities, such as swimming or showering, where the face covering
  will get wet.

  f. When eating or drinking in an indoor business or indoor public space,
  provided that at least 6 feet of physical distance is maintained between
  persons who are not members of the same party.

  g. When asked to remove a face covering to verify an identity for lawful
  purposes.

  h. While communicating with an individual who is deaf or hard of hearing or has
  a disability, medical condition, or mental health condition that makes
  communication with that individual while wearing a face covering difficult,
  provided that social distancing is maintained to the extent possible between
  persons who are not members of the same household.

  i. While receiving a service—including a dental examination or procedure,
  medical examination or procedure, or personal care service—that cannot be
  performed or would be difficult to perform when the individual receiving the
  service is wearing a face covering. Workers performing services for an
  individual who is allowed to temporarily remove their face covering under
  this provision must comply with face covering requirements in the applicable
  industry guidance, available at the Stay Safe Minnesota website
  (https://staysafe.mn.gov).

6

    j.  When an individual is alone, including when alone in an office, a room, a cubicle with walls that are higher than face level when social distancing is maintained, a vehicle, or the cab of heavy equipment or machinery, or an enclosed work area. In such situations, the individual should still carry a face covering to be prepared for person-to-person interactions and to be used when no longer alone.

    k.  When a public safety worker is actively engaged in a public safety role, including but not limited to law enforcement, firefighters, or emergency medical personnel, in situations where wearing a face covering would seriously interfere in the performance of their public safety responsibilities.

11. **Situations where face coverings are strongly encouraged.** I strongly encourage Minnesotans to wear face coverings in the following situations:

    a.  During indoor or outdoor private social gatherings (*e.g.*, when visiting at a private home with friends or relatives who do not reside in the same household), particularly in settings where it is difficult or impossible to maintain social distancing.

    b.  When riding in a private vehicle with a person or persons who do not reside in the same household.

    c.  Inside your home, if you are infected with COVID-19 or experiencing COVID-19 symptoms and reside with others who could be infected.

    d.  When participating as an athlete in indoor or outdoor organized sporting events, to the extent possible, where social distancing is not being maintained.

    e.  Except for workers required to wear face coverings under paragraph 9.d, in any outdoor business or public outdoor space when it is not possible to consistently maintain social distancing, such as when entering or exiting a business, being seated, moving around in a space with others present, using the restroom, ordering food, or waiting in line.

12. **Child care, preschool, kindergarten through grade 12 schools, and higher education institutions.** Child care settings and educational institutions have unique needs that do not always permit universal face coverings when indoors. Child care and schools also require additional flexibility surrounding the use of face shields, which increase visibility of facial expressions and lip movements to aid in speech perception and child development and learning. To provide for an effective developmental and educational environment, and to ensure safety for workers, students, and children, these businesses and institutions must comply with the following specific requirements on the use of face coverings and face shields. These specific requirements and recommendations apply only within the premises of the child care settings, preschool, kindergarten through grade 12 schools, and higher education institutions discussed in this paragraph 12. These specific requirements do not apply when school, child care, or higher education buildings are used for purposes

7

other than child care, preschool, kindergarten through grade 12 education, or higher
education—in which case, they should be treated like any other indoor public space
or indoor business for purposes of this Executive Order.

a. **Child care, preschool, and pre-kindergarten.** Child care settings—defined
as family and group day care homes (licensed under Minnesota Rules 2019,
Chapter 9502); child care centers (licensed under Minnesota Rules 2019,
Chapter 9503); certified centers (certified under Minnesota Statutes 2019,
Chapter 245H); legal nonlicensed child care providers (defined under
Minnesota Statutes 2019, section 119B.011, subdivision 16); certain license-
exempt Head Start, public and private school programs (defined under
Minnesota Statutes 2019, section 245A.03, subdivision 2(a)(5), (13), and
(26)); and other Head Start, preschool and pre-kindergarten programs—
serving children five-years-old and under are required to comply with face
covering and face shield guidance available at
https://www.health.state.mn.us/diseases/coronavirus/schools/masks.html.
Basic requirements for these settings are detailed below, but child care
providers must consult the guidance for the full list of face covering and face
shield requirements, recommendations, and exceptions. These requirements,
recommendations, and exceptions should be clearly documented in COVID-
19 Preparedness Plans and made available to families and staff.

   i. **Children five and under exempt.** Children five years old and under
   are not required to wear a face shield or face covering, and children
   under two should never wear a face covering due to the risk of
   suffocation. A child between the ages of two and five who can reliably
   wear a face covering or face shield in compliance with CDC guidance
   on *How to Wear Cloth Face Coverings*
   (https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-
   sick/how-to-wear-cloth-face-coverings.html) (*i.e.*, without frequently
   touching or removing the covering) may do so, except that children
   who are sleeping, unconscious, incapacitated, or otherwise unable to
   remove a face covering or face shield without assistance or who
   cannot tolerate a shield or covering due to a developmental, medical,
   or behavioral health condition should not wear a face covering or face
   shield.

   ii. **Workers exempt.** Workers meeting exemption criteria described in
   paragraph 8 of this Executive Order should not wear a face covering
   and should wear a face shield only if able to do so safely.

   iii. **Groupings.** To reduce the risk of exposure, child care settings should
   maintain consistent groups or cohorts of children and related workers
   and should take steps to avoid intermixing groups or cohorts of
   children and workers to the extent possible.

iv.   **Communal space.** Unless exempt, workers and children must wear a face covering or face shield in all indoor communal areas where groups intermix (*e.g.*, center or building hallways, lobbies, restrooms, breakrooms, etc.).

    A.   Non-exempt workers and children who are required to wear a face covering or shield may remove the covering or shield temporarily to engage in certain activities that make wearing a face shield difficult or impracticable (*e.g.*, when eating or drinking; when communicating with an individual who is deaf or hard of hearing or has a disability, medical condition, or mental health condition that makes communication with that individual while wearing a face covering difficult; when participating in certain physical activities or playing certain instruments, or when performing or presenting; during activities, such as swimming, where the face covering will get wet; or when receiving a service, such as nursing or medical service, that would be difficult or impossible to perform with a face covering), provided that social distancing is maintained to the extent possible.

    B.   Face coverings or face shields are strongly recommended outdoors for non-exempt workers and children when it is difficult or not possible to maintain social distancing.

v.   **Classrooms and in-home care.** A child care setting may allow non-exempt staff and workers to remove face coverings or face shields when in an indoor classroom or care setting (including family child care and in-home care providers) that is confined to one group or cohort. Non-exempt workers and children are strongly encouraged to wear coverings or shields in these settings to the extent possible, especially when social distancing cannot be maintained, unless wearing a covering or shield would interfere with child development.

vi.   **Optional exemption for children.** If a child care provider cares for children who are five and under, but also cares for children older than five, the business can exempt children older than five from face covering and face shield requirements only if the exemption is clearly communicated in writing with all enrolled families and included in the business's COVID-19 Preparedness Plan.

vii.   **More protective face covering policies permitted.** Nothing in this Executive Order should be construed as preventing a child care setting from developing a face covering policy that imposes more protective requirements, consistent with applicable law, than those in this Executive Order or applicable industry guidance.

9

b. **Kindergarten through grade 12 schools.** Kindergarten through grade 12 schools must comply with face covering and face shield guidance available at https://www.health.state.mn.us/diseases/coronavirus/schools/k12planguide.pdf. The basic requirements for these settings are detailed below, but these schools must consult the guidance for the full list of face covering and face shield requirements, recommendations, and exceptions.

    i.   In general, unless the individual is exempt under paragraph 8.a or .c of this Executive Order or is under the age of two, all students, staff, and other persons present indoors in school buildings and district offices or riding on school transportation vehicles are required to wear a face covering. This paragraph 12.b does not apply to child care, pre-kindergarten or preschool programs on school premises, which are subject to the requirements of paragraph 12.a.

    ii.   Face shields may be used as an alternative to face coverings in the following situations:

        A. For students who are unable to tolerate a face covering due to a developmental, behavioral, or medical condition.

        B. For teachers of all grades when a face covering would impede the educational process.

        C. For staff providing direct support student services when a face covering would interfere with the services provided.

        D. For students in kindergarten through grade 8 when wearing a face covering is otherwise problematic for the student.

    iii.   Staff may remove face coverings when working alone, including when alone in an office, classroom, vehicle, cubicle with walls at least face level when social distancing is maintained, or other enclosed work area.

    iv.   In addition, staff, students, and other persons present indoors in a school building or district office may temporarily remove face coverings in the following situations, provided that social distancing is maintained to the extent possible:

        A. When engaged in physical activity (*e.g.*, during recess or physical education) or sporting events where the level of exertion makes wearing a face covering difficult or impracticable.

        B. When eating or drinking.

C.  During practices or performances involving singing, acting, public speaking, or playing musical instruments that make wearing a face covering difficult or impracticable.

D.  In response to requests to verify an identity for lawful purposes.

E.  When communicating with an individual who is deaf or hard of hearing or has a disability, medical condition, or mental health condition that makes communication with that individual while wearing a face covering difficult.

F.  During activities, such as swimming or showering, where the face covering will get wet.

G.  While receiving a service—including nursing, medical, or personal care services—that cannot be performed or would be difficult to perform when the individual receiving the service is wearing a face covering. Workers performing a service for an individual who is allowed to temporarily remove their face covering under this provision must comply with the face covering requirements in the applicable Industry Guidance, available at the Stay Safe Minnesota website (https://staysafe.mn.gov).

v.  Except for staff, children, or other persons who are exempt under paragraph 8.a or .c of this Executive Order or are under the age of two, face coverings (or, where applicable, face shields) are strongly recommended outdoors when it is not possible to maintain social distancing or where it will likely not be possible to maintain social distancing.

c.  **Higher education institutions.** Students and staff in higher education institutions must comply with the requirements of this Executive Order, except that students and faculty are permitted to wear face shields as an alternative to face coverings in the following situations:

i.  When faculty are teaching a class or giving a lecture, or when students are participating in classroom activities, where it is important for the face to be seen (for example, certain activities in language or communications classes).

ii.  Where a face covering may pose a hazard due to the nature of the class or activity (for example, in a laboratory component of a class).

iii.  When staff or faculty are providing direct support student services and a face covering impedes the service being provided.

11

13. **Inclusion of face covering requirements in businesses' COVID-19 Preparedness Plans.** All businesses must update their COVID-19 Preparedness Plans to include the face covering requirements of this Executive Order, including those that have been incorporated into the Industry Guidance applicable to their business available on the Stay Safe Minnesota website (https://staysafe.mn.gov), inform their workers how their plan has been updated, and make the revised plan available to their workers. The Industry Guidance applicable to the business may include face covering requirements that are more protective than those of this Executive Order, consistent with applicable law.

14. **Notice of face covering requirements.** Businesses must post one or more signs that are visible to all persons—including workers, customers, and visitors—instructing them to wear face coverings as required by this Executive Order.

15. **Implementation of face covering requirements by businesses.**

    a. Businesses must require that all persons, including their workers, customers, and visitors, wear face coverings as required by this Executive Order.

    b. When possible, businesses must provide accommodations to persons, including their workers and customers, who state they have a medical condition, mental health condition, or disability that makes it unreasonable for the person to maintain a face covering, such as permitting use of an alternate form of face covering (*e.g.*, face shield) or providing service options that do not require a customer to enter the business.

    c. Businesses may not require customers to provide proof of a medical condition mental health condition, or disability, or require customers to explain the nature of their conditions or disability.

    d. Businesses must follow the requirements of other applicable laws with respect to whether a business may require a worker to provide documentation of a medical condition, mental health condition, or disability related to their inability to wear a face covering and what the business may ask regarding the condition or disability.

    e. Nothing in this Executive Order requires businesses or their workers to enforce this requirement when it is unsafe to do so, or authorizes them to restrain, assault or physically remove workers or customers who refuse to comply with this Executive Order.

    f. Nothing in this Executive Order authorizes businesses or their workers to violate other laws, including anti-discrimination laws.

16. **More protective policies permitted.** Nothing in this Executive Order should be construed to prevent a business from developing a policy that imposes more protective requirements with respect to face coverings, consistent with applicable law, than those in this Executive Order or applicable industry guidance. This Executive

Order does not authorize landlords or property managers to require tenants and others to wear face coverings in tenants' living units. Landlords and property managers must provide a clear means for tenants and others to request a reasonable accommodation to face covering requirements in common areas.

17. **Safe work**. The protections noted in Executive Order 20-54 (Protecting Workers from Unsafe Working Conditions and Retaliation) remain in full force and effect. Businesses are responsible for the safety and health of their workplaces and must adhere to the requirements set out in the Industry Guidance applicable to the business, available on the Stay Safe Minnesota website (https://staysafe.mn.gov), Minnesota OSHA Standards, and MDH and CDC Guidelines, including the face covering requirements of this Executive Order. Under existing law and authority, DLI may issue citations, civil penalties, or closure orders to places of employment with unsafe or unhealthy conditions, and DLI may penalize businesses that retaliate against employees who raise safety and health concerns.

18. **Enhanced local measures permitted**. Nothing in this Executive Order or previous Executive Orders should be construed to prohibit or prevent political subdivisions from implementing, within their jurisdictions and pursuant to applicable law and authority, requirements beyond those contained in this Executive Order, as long as the additional requirements have a real or substantial relation to the public health crisis caused by COVID-19. Pursuant to Minnesota Statutes 2019, section 12.32, political subdivisions may not relax or reduce this Executive Order's requirements. In other words, to the extent that they have authority to do so, cities and other political subdivisions may take actions that are more protective of the public health, consistent with applicable law, but may not take actions that are less protective of the public health.

19. **Relationship with other law.** Wearing a face covering in compliance with this Executive Order or local ordinances, rules, or orders is not a violation of Minnesota Statutes 2019, section 609.735.

20. **Enforcement**. I urge all Minnesotans to voluntarily comply with this Executive Order.

    a. **Individual violations**. Any individual who willfully violates this Executive Order is guilty of a petty misdemeanor and upon conviction must be punished by a fine not to exceed $100. This does not apply to: (1) children younger than 14 years old; or (2) students 14 years old and older who are enrolled in a school or higher education institution identified in Paragraph 12 of this Executive Order, and who are on the premises of the school or institution for educational purposes.

    b. **Business violations.**

        i. **Business compliance with this Executive Order.** As provided in paragraphs 13 through 15 of this Executive Order, a business is

compliant with this Executive Order if (1) their workers are wearing face coverings as required by this Executive Order; (2) the business has updated their COVID-19 Preparedness Plan to address the face covering requirements of this Executive Order; (3) the business has posted one or more signs that are visible to all persons—including workers, customers, and visitors—instructing them to wear face coverings as required by this Executive Order; and (4) the business makes reasonable efforts to enforce this order with respect to customers and visitors. For additional information about the steps businesses can take to ensure compliance with this order, refer to the face covering guidance and FAQs available at the Facemasks and Personal Protective Equipment webpage (https://www.health.state.mn.us/diseases/coronavirus.html#masks). The guidance and FAQs may also be accessed at the following webpages: https://www.health.state.mn.us/diseases/coronavirus/facecover.html (guidance document) and https://www.health.state.mn.us/diseases/coronavirus/facecoverfaq.html (FAQ document).

ii. **Penalties for non-compliance.** Any business owner, manager, or supervisor who fails to comply with this Executive Order is guilty of a misdemeanor and upon conviction must be punished by a fine not to exceed $1,000, or by imprisonment for not more than 90 days. In addition to these criminal penalties, the Attorney General, as well as city and county attorneys, may seek any civil relief available pursuant to Minnesota Statutes 2019, section 8.31, for violations of this Executive Order, including civil penalties up to $25,000 per occurrence from businesses and injunctive relief.

c. **Regulatory enforcement.** State and local licensing and regulatory entities that regulate businesses for compliance with statutes, rules, and codes to protect the public are encouraged to assess regulated businesses' compliance with this Executive Order and use existing enforcement tools to bring businesses into compliance.

d. **Individual rights.** Nothing in this Executive Order is intended to encourage or allow law enforcement to transgress individual constitutional rights.

Pursuant to Minnesota Statutes 2019, section 4.035, subdivision 2, and section 12.32, this Executive Order is effective immediately upon approval by the Executive Council. It remains in effect until the peacetime emergency declared in Executive Order 20-01 is terminated or until it is rescinded by proper authority.

A determination that any provision of this Executive Order is invalid will not affect the enforceability of any other provision of this Executive Order. Rather, the invalid provision will be modified to the extent necessary so that it is enforceable.

14

Signed on July 22, 2020.

**Tim Walz**
Governor

Filed According to Law:

**Steve Simon**
Secretary of State

Approved by the Executive Council on July 22, 2020:

**Alice Roberts-Davis**
Secretary, Executive Council

15

Filed on July 22, 2020
Office of the Minnesota
Secretary of State,
Steve Simon

# Office of the Revisor of Statutes

## 2019 Minnesota Statutes

Authenticate 🗎 PDF

**609.735 CONCEALING IDENTITY.**

   A person whose identity is concealed by the person in a public place by means of a robe, mask, or other disguise, unless based on religious beliefs, or incidental to amusement, entertainment, protection from weather, or medical treatment, is guilty of a misdemeanor.

   **History:** *1963 c 753 art 1 s 609.735; 1971 c 23 s 73; 1986 c 444; 1995 c 30 s 1*

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All rights reserved.



EXHIBIT
C



**Mary Franson**
**State Representative**

District 8B

# Minnesota
# House of
# Representatives

May 8, 2020

The Honorable Tim Walz
130 State Capitol
75 Rev Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

**RE: Executive Order Closing Houses of Worship**

Dear Governor Walz:

The undersigned faith leaders have asked me to forward to you their concerns and intentions regarding their freedom to worship and your current restrictions against meeting together as the Bible commands them to do in Hebrews 10:24–25, which says,

> *And let us consider how to stir up one another to love and good works, not neglecting to meet together, as is the habit of some, but encouraging one another, and all the more as you see the Day drawing near. (ESV)*

We, the undersigned, are expressing to you that we report to a higher authority than the government.  Romans 13:1-4 and 1 Peter 2:13-15 tells us as Christ-Followers that we are to be obedient to the governing authorities as long as those authorities promote and encourage us to do what is God's will for good and do not force us to do what is evil. When government praises those who do evil and punishes those who do good, it is our Christian duty to resist.  We find the order to desist from having face-to-face worship in violation of our duty to obey God and His word. Online worship is not a satisfactory substitute for face-to-face worship. Many of the people we serve do not have access to the internet and are having their religious freedoms taken away from them by not being allowed to attend voluntarily for worship at houses of worship.

At first, when President Trump asked churches to cease holding public worship because of the Covid-19 virus we voluntarily did so responding to a request.  It was not an order and constitutionally neither he nor you have a right to ban public worship according to the First Amendment. We did so thinking the dangers of the virus were far greater than we now know them to be. As each week passes the mortality rate of this virus declines and is now close to or lower than .05% nationally, hardly any more dangerous than the Swine Flu, Bird Flu, H1N1, or many other influenzas that have killed thousands. Yet the government did not forcibly close churches during those epidemics and the government has no right to do so now.



**EXHIBIT**

D

Your executive orders have suspended our constitutional rights and our freedom of religion in every continuing extension of your executive orders and we are not certain nor have been promised when those restrictions will end. We the undersigned are asking you to rescind your orders requiring churches to cease from face-to-face worship, orders that if violated means they will face the penalty of law outlined in your executive orders. We say this since these orders exceed your authority as a governor of a state that must, by law, be in compliance with the Constitution of the United States and its Bill of Rights.

Let us remind you again of the freedoms secured to us in the First Amendment, which says:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

That Bill of Rights has been applied to all the states of the Union since the 14th Amendment was ratified and now all states including Minnesota must submit to the rights recognized in this Amendment. We further acknowledge and hold that this right was not "given" to the people of the United States of America by the government, but was a pre-existing right given to us by God and acknowledged by the government of the United States in its founding documents.

Our right to worship as we see fit has been recognized recently by two federal courts. The first case was *First Baptist Church v. Kelly. 2020* U.S. Dist. LEXIS 68267 (D. Kansas, April 18, 2020) and *On Fire Christian Ctr. V. Fischer. 2020* U.S. Dist. LEXIS 65924 (W.D. Kentucky, April 11, 2020). A copy of the court opinion in *On Fire* may be found at http://lc.org/042920OnFireOpinion.pdf. And the court opinion for First Baptist can be found at http://lc.org./042920FirstBaptistTRO.pdf. You will find that, especially in the case *First Baptist Church v. Kelly,* that the federal court found the restrictions against meeting for worship with more than 10 people was unconstitutional when other secular businesses were allowed to do so and was in violation of the First Amendment. Here are the court's exact words, "**It goes without saying that the government could not lawfully expressly prohibit individuals from meeting together for religious services**".

In other words, if shopping at Menards or Target or Costco or any other business is permitted but gathering for worship is not permitted then that is a clear violation of the First Amendment.

The U.S. Supreme Court has in the past allowed temporary restrictions to the freedom of religion as long as the reason was extremely compelling and was narrowly targeted to cause the least amount of restrictions as necessary. We find the reason no longer compelling since the numbers as indicated earlier are not what they were first represented to be. And, we cannot trust the numbers we are given to be actual Covid-19 cases. Minnesota State Senator Scott Jensen has repeatedly stated that the MN Public Health Department has encouraged all doctors to state the cause of death on most death certificates as "Covid" even though there were other underlying co-morbidities that were the actual cause of death and unrelated to Covid-19 or at most distantly related to Covid-19. Therefore, since the mortality rate is drastically lower than the rates first estimated, we no longer consider the Corona virus to be a compelling reason to shut down churches in the state of Minnesota and deny them their right to worship according to the First Amendment.

Therefore, we are communicating to you our intent to open our churches to public face-to-face worship every Sunday in May and following Sundays, regardless of your no-longer-lawful executive order not to do so. We are communicating our intent and position to the Attorney General of the Unites States, William P. Barr, who has announced that he will defend Americans against intrusions into their constitutional liberties by the governors of the states.

Please use this opportunity to modify your Executive Orders and communicate that change to the public as soon as possible.

Signed,

Rep. Mary Franson

Rev. Darryl Knappen
Cornerstone Church, Alexandria, MN

Pastor Mike Bartolomeo
Harvest Church, Alexandria, MN

Pastor Andy Lewis
First Baptist, Glenwood, MN

Pastor John Taplin
New Life Church, Alexandria, MN

To Governor Tim Walz and other elected officials.

Whereas we are ministers of the gospel of Jesus Christ with authority under God to preach and proclaim His rule over all of life and...

Whereas you are our God-ordained civil authorities delegated with the task to govern justly...

We have seen fit to inform you of our convictions with respect to our calling as pastors where it may conflict with your governing policies.

We recognize the authority for the governed and the government comes from Romans 1, I Timothy 2, Romans 13 and I Peter 2. We are to respect the legitimacy of Governing authorities, and the Governing authorities are to rule as delegated servants of God, to the people.

We also recognize that from our nation's founding, we have a sacred and legal contract that:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

(U.S. Constitution, Amendment 1)

As Christian churches, the exercise of our religion indeed requires the freedom of assembly. When we gather, we do so, with all ages, ethnicities, socio-economic classes, and both genders, under the banner of the Lord Jesus Christ, who has purchased our eternal hope through His life, death and resurrection. To this end, we as pastors, under God, call a group of believers, under our care, to voluntarily assemble regularly in an orderly fashion considering the needs of each other. The nature of our Christian religion physically requires our members "people peaceably to assemble" (U.S. Constitution, Ammendment 1) .

In times of crisis, our churches, out of love of neighbor and one-another, have voluntarily suspended meetings. In the case of Covid 19, for example, though some of us are in rural areas or have small churches, we each have made the conscientious decision to limit our public gatherings. We acknowledge that snow-storms, local crisis, wars, pandemics, etc. are all providential hardships that may warrant temporarily suspending our ordinary meeting schedule, however, we must emphasize that decisions in this regard are the prerogative of the church, not the state.

We say this to emphasize that it is our liberty to meet or not to meet. These decisions fall under the institutional jurisdiction of the church and this constitutional right is not to be infringed. We remind you that it is our freedom of conscience which dictates our decision to suspend meetings. Any magistrate who presumes to overrule this right violates the sacred trust established in the Constitution of the United States.

We are deeply concerned for the precedent set by our government during the COVID-19



EXHIBIT

E

pandemic. Governments may have an interst to quarantine known sick individuals and groups as necessary (Leviticus 13), but not the church from gathering. This must not happen.  The church has authority and performs a necessary and essential function in society which the civil government simply cannot supply.  We must be allowed the freedom of conscience to make essential and necessary decisions for our congregations.  We are obligated to rule in our respective jurisdictions according to the Bible.  Both clergyman and magistrate must recognize their responsibilities and limitations in the fear of God as both will be held accountable to the standard of His Word.

  We deem our governor's 'stay at home' order a clear violation of both the separation of powers and liberty of the conscience for religious worship by which our very government was set-apart from other nations.,Accordingly, we must respectfully disobey the stay at home order as this is in direct conflict of our 1st Amendment freedoms to conduct the ministry of the church.

  When our deepest convictions are in conflict with the demands of the state we stand with our fore-bearers: "But Peter and the apostles answered, "We must obey God rather than men." - Acts 5:29


Under God and Respectfully,

Pastor Eric Anderson

--Lifespring Church, Crosby MN

Pastor Ken Carlton

--Providence Church, Cross Lake MN